OMAHA ASSOCIATION OF FIREFIGHTERS, LOCAL 385, APPELLEE, v. CITY OF OMAHA, NEBRASKA, A MUNICIPAL CORPORATION, APPELLANT.

231 N. W. 2d 710

Filed July 31, 1975. No. 40030.

Herbert M. Fitle and Thomas J. Young, for appellant.

James P. Costello of Costello & Dugan, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, Mc-COWN, NEWTON, CLINTON, and BRODKEY, JJ.

McCOWN, J.

The city of Omaha has appealed from an order of the Court of Industrial Relations which fixed and determined wages and certain conditions of employment for employees of the fire division of the public safety department of the City of Omaha pursuant to section 48-818, R. R. S. 1943. This action was brought by the Omaha Association of Firefighters, Local No. 385, the bargaining agent for the firemen and employees involved.

This action was filed in the Court of Industrial Relations on September 6, 1974, to resolve disagreements between the parties relative to a contract for the fire division of the public safety department of the City of Omaha for the calendar year 1975. Under section 48-818, R. R. S. 1943, the findings and orders of the Court of Industrial Relations may establish or alter the scale of wages, hours of labor, or conditions of employment, or any one or more of the same. The evidence for both parties consisted largely of statistical data and expert testimony as to

wages and working conditions of firemen in Omaha and in other cities.

The Omaha Association of Firefighters, hereinafter called Union, based its testimony essentially upon wages, hours and working conditions for firefighters in seven cities, namely Cincinnati, Toledo, Akron, and Dayton, Ohio; Minneapolis and St. Paul, Minnesota; and Wichita, Kansas. These cities were selected because thier population was within about 100,000 above or below the population of Omaha, and they were all within the Bureau of Labor Statistics North Central Region, a region which includes Omaha. The starting salary of firemen in Omaha was 20.9 percent below the arithmetic mean of the seven cities. The Union witness concluded, however, that maximum salary in Omaha with no longevity needed to be increased by 12 percent to meet total mean average salaries then being paid in the other cities. Other testimony, however, established that the general wage rates in Ohio and Minnesota were significantly higher than those in Nebraska because of the presence of unionization and intensive manufacturing, and that salaries paid to employees in the public sector were therefore also elevated above those in the City of Omaha.

The City's evidence supported proposed wage rates based upon a differential between Omaha and Lincoln, Nebraska, which would produce an 8.2 percent increase in wages. There was evidence, however, that the proper differential in previous years was 9 percent rather than 8.2 percent. In addition, the city also used Des Moines and Kansas City as comparables. Those wage levels, however, were currently lower than those the city conceded would be proper on the basis of a comparison with Lincoln.

The court did not accept the evidence of either party but instead analyzed the evidence and determined that a wage increase of 10.2 percent in the starting salary of firemen represented a wage level comparable to the prevalent. The court also determined that it was more

appropriate to apply the 10.2 percent figure to each rank and grade among firemen rather than to attempt to arrive at different percentage figures for different ranks and grades. The court also determined that there should be no change in the hours of work; that holiday pay should be increased from 96 to 108 hours a year; increased maximum longevity pay from $180 to $360 per year; ordered the city to provide and pay the premiums for $5,000 of life insurance coverage; increased the annual uniform allowance by $20 to $140 per year; and ordered the city to provide turn-out gear at its own expense. The court refused to alter call-out pay, overtime pay, injured-on-duty pay, and current practices of payment of tuition for fire technology classes. The court also refused to grant the Union request to permit union activities on city property during city time and granting pay for union officials during the time of contract negotiations. Finally, the court allowed the union to deduct dues on a percentage basis rather than on a flat dollar amount. The City of Omaha has appealed.

The city contends in substance that the Court of Industrial Relations did not comply with the statutory requirements in establishing rates of pay and conditions of employment. The basic contention is that the method of selection of the cities used for comparisons and the method of establishing the hypothetical labor market were erroneous and improper.

Section 48-818, R. R. S. 1943, provides in part: "The findings and order or orders may establish or alter the scale of wages, hours of labor, or conditions of employment, or any one or more of the same. In making such findings and order or orders, the Court of Industrial Relations shall establish rates of pay and conditions of employment which are comparable to the prevalent wage rates paid and conditions of employment maintained for the same or similar work of workers exhibiting like or similar skills under the same or similar working conditions. In establishing wage rates the court shall take

into consideration the overall compensation presently recieved by the employees, having regard not only to wages for time actually worked but also to wages for time not worked, including vacations, holidays, and other excused time, and all benefits received, including insurance and pensions, and the continuity and stability of employment enjoyed by the employees." That portion of the statute remains after an amendment by the Legislature in 1969 deleted language which restricted comparisons to "the same labor market area and, if known, in adjoining market areas within the state and which in addition bear a generally comparable relationship to wage rates paid and conditions of employment maintained by all other employers in the same labor market area." See Laws 1969, c. 407, § 6, p. 1410. The Legislature, by virtue of the amendment, removed all restrictions on the labor market areas to be considered, and completely removed provisions restricting comparisons to areas within the State of Nebraska. The Legislature recognized that virtually every city and public employer is distinct and different from every other city or employer in some material respects. The parties here tacitly concede that there is no other city in Nebraska directly comparable to Omaha.

Prevalent wage rates must of necessity be established by nonlocal comparisons whenever the public employer is the only employer for a specified type of work in a local labor market. Prevalant wage rates to be determined by the Court of Industrial Relations for firemen employees of Omaha, Nebraska, must of necessity be determined by comparison with wages paid for comparable services in reasonably similar labor markets. A prevalant wage rate to be determined by the Court of Industrial Relations must almost invariably be determined after consideration of a combination of factors. In Crete Education Assn. v. School Dist. of Crete, 193 Neb. 245, 226 N. W. 2d 752, this court accepted the dictionary definition of the word "comparable" as "having enough like characteristics or qualities to make comparison appropriate." We also de-

termined that the standard of prevalent wage rates now is one of general practice, occurrence, or acceptance. It must be noted also that in this case the Court of Industrial Relations did not determine the prevalent wage rates for firemen by any direct computation or application of average or mean rates from seven cities nor from ten cities. Instead, it weighed, compared, and adjusted all the factors involved in each of the cities, which resulted in a determination of prevalent wages paid for comparable services in reasonably similar labor markets. Under section 48-818, R. R. S. 1943, in selecting cities in reasonably similar labor markets for the purpose of comparison in arriving at comparable and prevalent wage rates the question is whether, as a matter of fact, the cities selected for comparison are sufficiently similar and have enough like characteristics or qualities to make comparison appropriate. Those determinations here were within the field of expertise of the Court of Industrial Relations, were made after a consideration and comparison of all the evidence, and the methods of selection and comparison were in accord with the requirements of section 48-818, R. R. S. 1943.

The city also contends that the Court of Industrial Relations did not take into consideration the overall compensation presently received by employees in determining prevalent wage rates as required by section 48-818, R. R. S. 1943. In this connection the evidence presented by the city was directed only to wage rates and was not directed to fringe benefits. The inference that plaintiff's evidence on these issues did not properly reflect overall compensation is unsupported by the record. The Court of Industrial Relations specifically noted that it did not cost out the total compensation package because it was not necessary. The wages it allowed and each of the other economic fringe benefit issues were resolved in conformity to prevalent practice, and in the absence of any showing that any economic fringe benefits are out of line with the prevalent, the total compensation package was a

composite of practices each and all of which, including the total, are comparable to the prevalent. In establishing wage rates under section 48-818, R. R. S. 1943, the Court of Industrial Relations is required to take into consideration the overall compensation received by the employees, including all fringe benefits. In this case the Court of Industrial Relations did take into consideration the overall compensation presently received by the employees, including all fringe benefits, as required by section 48-818, R. R. S. 1943.

The final contention of the city is that the Court of Industrial Relations improperly imposed the 10.2 percent wage increase here across the board in each rank or grade instead of making a separate determination of the specific percentage increase to be allowed to each rank or class of fireman. Neither party questioned the existing differentials among ranks of firemen or the existing differentials within ranks among grades. Under such circumstances the Court of Industrial Relations determined that it would be more appropriate to apply the 10.2 percent figure to each rank and grade of fireman in order that the present contract differentials as established by agreement and past practice would be maintained rather than distorted. The evidence at trial, as well as previous offers by both parties, dealt only with an across-the-board increase and neither the city nor anyone else ever challenged such an approach until the case reached this court. The action of the Court of Industrial Relations simply maintains the relationship between ranks and grades that have been built into the previous labor arrangements. An issue not supported in the evidence and not presented to the Court of Industrial Relations will not ordinarily be considered in this court on appeal.

The judgment of the Court of Industrial Relations was correct and is affirmed.

AFFIRMED.

SPENCER, J., dissenting.

Section 48-818, R. R. S. 1943, provides the Court of Industrial Relations, in altering the scale of wages, hours of labor, or conditions of employment, shall establish rates of pay and conditions of employment which are comparable to the prevailing wage rates paid and conditions of employment maintained for the same or similar work of workers exhibiting like or similar skills under the same or similar working conditions.

As I interpret the statute, this does not permit the Court of Industrial Relations to establish a hypothetical labor market in order to determine prevalent wage rates and prevalent fringe benefits. Even if the Court of Industrial Relations were to be permitted to construct a hypothetical labor market to reach its determination, that hypothetical labor market must be based upon competent evidence and not on mere assumptions, speculations, or conjectures.

I concede that for purposes of comparison in arriving at comparable and prevalent wage rates, the Court of Industrial Relations may select for comparison cities that are sufficiently similar and have enough like characteristics or qualities to make comparison appropriate. While these determinations are within the field of expertise of the Court of Industrial Relations, as suggested by the majority opinion, I maintain that we have here an arbitrary and unreasonable abuse of that so-called expertise. Nor do I agree that the court was able to make a proper adjustment to achieve similarity.

The union based its testimony for comparison purposes on seven cities: Cincinnati, Toledo, Akron, and Dayton, Ohio; Minneapolis and St. Paul, Minnesota; and Wichita, Kansas. All these cities have a great deal more maufacturing firms, greater industrialization, and unionization, and therefore higher wage rates. The city's expert, on the other hand, utilized for comparison purposes Lincoln, Des Moines, and Kansas City, which were similar to Omaha because their economies were

similar. They are geographically close, and they draw upon the same labor supply.

The city's expert testified that population is not directly related to wages; that population density is, because density is related to the type of construction found in a city and five of the cities employed by the union had greater population density than Omaha. The distance between Omaha and the union's proposed cities made it unlikely that there would be an interchange of laborers. Based upon population, population density, manufacturing, unionization, geographic location, and common labor supply, Lincoln, Des Moines, Kansas City, and Omaha are similar and can be properly compared to one another.

It should be obvious that if the Court of Industrial Relations is to accept any city selected by the union for comparison purposes, it essentially is permitting the union to dictate the wage scale in Nebraska.

I would reverse this case because the Court of Industrial Relations should not be permitted to construct a hypothetical labor market in order to determine prevalent wage rates and prevalent fringe benefits. However, even if it were conceded to have this right, then I would reverse the case because the hypothetical labor market herein was not based upon competent evidence but was based upon mere assumptions, speculation, or conjecture.

I would also reverse the case because I do not believe the Court of Industrial Relations in establishing wage rates and fringe benefits took into consideration overall compensation. To do so requires consideration of not only wages for time actually worked but also for time not worked, including vacations, holidays, and other excused time and all benefits received, including insurance and pensions. Further, fringe benefits and wage rates must be considered together. The same array of employers should be used to determine prevalent wage rates

and prevalent fringe benefits. This was not done in this instance.

WHITE, C. J., joins in this dissent.

BOSLAUGH, J., concurring.

While I join in the opinion of the court and believe that the order of the Court of Industrial Relations was within its discretion, I share Judge Spencer's concern in regard to evidence concerning wages paid in Cincinnati, Toledo, Akron, and Dayton, Ohio. It seems to me that such evidence had little or no relevance to the issues in this case.