## American Federation of State, County and Municipal Employees Local 2088, Appellee, v. County of Douglas et al., Appellants.

309 N.W.2d 65

Filed August 7, 1981.. No. 43141.

Nelson & Harding, Donald L. Knowles, Douglas County Attorney, H. L. Wendt, and John J. Reefe, Jr., for appellants.

John B. Ashford of Bradford & Coenen for appellee.

Heard before Krivosha, C.J., Boslaugh, McCown, Clinton, Brodkey, White, and Hastings, JJ.

Krivosha, C.J.

In argument on the motion for rehearing, appellee maintains that the language of our opinion previously adopted and appearing at 208 Neb. 511, 304 N.W.2d 368 (1981), with regard to the obligation of the public employer to the public employee over subsequent years' raises, is ambiguous. In an effort to clarify our position, we substitute the following language to our opinion, in lieu of that language which now appears as the last full paragraph of the opinion:

It is the holding of this court that once a public employer has established a rate of pay for the performance of a particular job in a specific year by granting an across-the-board, cost-of-living wage increase to a group of employees, it may not withhold paying that salary to an employee of the classification granted the raise and performing that work, who would otherwise be entitled to payment at the increased rate of pay, solely on the basis that at the time the payment should otherwise be made the public employer and the bargaining representative of the employee

are then engaged in a labor dispute. By so declaring, we intend that the wage which should be paid to a public employee by a public employer during a dispute is that wage which the public employer has declared as the appropriate wage to be paid and which it would otherwise agree to pay the public employee if no dispute then existed. As an example, if in the instant case all county welfare employees were granted an increase of 7 percent across the board as a cost-of-living wage increase, the county may not pay the increase to nondisputing employees while escrowing the funds belonging to disputing employees until the dispute is terminated. Such a declaration may, in fact, cause some disputes to become moot. It would occur to us that that would be in keeping with the policy of the entire act and consistent with the Legislature's desire that the public policy of this state be such that there be no interruption of public service. The order of the CIR in the instant case is reversed and the cause remanded for further proceedings in accordance with this opinion, if necessary.

REVERSED AND REMANDED WITH DIRECTIONS.

CLINTON, J., dissenting.

I respectfully dissent from the original as well as the supplemental opinion issued after we heard arguments on the motion for rehearing. The issue of whether or not granting a raise to certain county employees not members of the union involved in the current controversy was not raised by either party in the case, nor was it considered by the Commission of Industrial Relations, and the evidence with respect to it was extremely limited, to say the least. The opinion, with respect to that issue, begins by saying: "Though it was not raised by either party, the record discloses that Douglas County may have granted to county employees not members of AFSCME a raise but withheld the same to members of AFSCME because of the existence of a labor dispute. We believe such

practice is both improper and illegal."

The response of the union to the motion for rehearing sets out what apparently is the entire record on the subject of the evidence on the issue. See p. 4, union's response. It will be noted that the employees referred to in the testimony are employees who are *not* in the bargaining unit involved in the current litigation, and the answer of the county's witness indicated that all employees of the county, whether in or out of any particular bargaining unit, apparently received a 7 percent wage increase where there was no labor dispute in progress or wage issues being negotiated.

What we have done in effect is to hold that whenever any group of employees of the governmental unit receives a wage increase, union employees in any bargaining unit involved in a wage dispute must receive the same increase as the nondisputing employees, and receive it in the same amounts and in the same across-the-board fashion.

The court's opinion also does not contemplate that there may be different bargaining years for labor contracts and that different and multiple bargaining units may be involved. As the motion for rehearing points out, our opinion uses the terms "members of AFSCME," "employees," and "disputing employees" almost interchangeably. The opinion also refers to wages in dispute "in a given year" and disputes "over a previous year's wages." It is obvious that there may be multiple bargaining units represented by unions in some cases, no unions in others, and, in many cases, where the bargaining unit may contain a mixture of union and nonunion employees.

It seems to me a more critical factor involved here may be that in selecting an issue that was not raised by the parties nor considered by the Commission of Industrial Relations, and doing so under our plain error rule, we pass on an issue which is, initially at least, an issue for the Commission of Industrial Relations. Neb. Rev. Stat. § 48-819.01 (Cum. Supp.

1980). The question of what is an unfair labor practice is a question which should be first raised in the Commission of Industrial Relations, and generally the Commission of Industrial Relations ought to have an opportunity to pass on the issue before this court reviews it. Such an issue ought to be fully covered by the evidence and argued by counsel before we undertake to get into it. Section 48-819.01 was enacted as a consequence of our holding in *University Police Officers Union v. University of Nebraska*, 203 Neb. 4, 277 N.W.2d 529 (1979). In that case we held that the Commission of Industrial Relations had no authority "to make findings with regard to unfair labor practices or direct a public employer to take any more action than is necessary to preserve and protect the status of the parties' property and public interest involved pending final determination of the issues." (Syllabus of the court.)

If every across-the-board raise granted by a governmental employer to employees in one bargaining unit not then involved in wage negotiations must be immediately passed on to every employee of every bargaining unit in across-the-board fashion, the governmental employer has lost virtually all its bargaining power. Every union or employee representative will feel entirely free to proceed with labor controversies and wage negotiations on every occasion because they have absolutely nothing to lose.

Such a broad holding is contrary to the provisions of the act which requires the Commission of Industrial Relations to determine and fix *comparable* wages.

We have consistently held that the determination of the terms and conditions of employment is a legislative function. *Orleans Education Assn. v. School Dist. of Orleans*, 193 Neb. 675, 229 N.W.2d 172 (1975). We have on our own initiative taken steps to confine the commission to its proper role under the Constitution and statutes. *Transport Workers of America v. Transit Auth. of City of Omaha*, 205 Neb. 26, 286 N.W.2d 102

(1979); *Saltz v. School Dist. of Norfolk*, 208 Neb. 740, 305 N.W.2d 635 (1981). It is inconsistent and illegal for us to usurp the function of the Commission of Industrial Relations on review by injecting a matter not an issue and on which, in any event, the commission has jurisdiction to pass on initially. Indeed, what the court has done is, if we may borrow a phrase from Mr. Justice Byron White, "a raw exercise of judicial power," i.e., without authority in law.

Even if this were an appeal from a court and involved a matter strictly judicial, there is no precedent which supports what we do here. We are not in this case merely saying a wrong principle of law has been relied upon, but say to the parties, in effect: This was not an issue made by the pleading or the evidence, nonetheless, we make it an issue.