HYANNIS EDUCATION ASSOCIATION, AN UNINCORPORATED
ASSOCIATION, APPELLEE AND CROSS-APPELLANT, V.
GRANT COUNTY SCHOOL DISTRICT NO. 38-0011,
ALSO KNOWN AS HYANNIS HIGH SCHOOL,
A POLITICAL SUBDIVISION OF THE STATE OF
NEBRASKA, APPELLANT AND CROSS-APPELLEE.
698 N.W.2d 45

Filed June 10, 2005. No. S-04-133.

Rex R. Schultze, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., for appellant.

Mark D. McGuire, of McGuire & Norby, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.
### NATURE OF CASE
This industrial dispute over wages and conditions of employment for the 2002-03 contract year is between the appellant and

cross-appellee, Grant County School District No. 38-0011 (the District), and the appellee and cross-appellant, Hyannis Education Association (the Association), the collective bargaining unit for teachers employed by the District. The District and the Association were unable to reach a negotiated agreement for the 2002-03 contract year, and the Association filed a petition with the Nebraska Commission of Industrial Relations (the CIR) seeking to invoke the CIR's authority to resolve the parties' industrial dispute over wages, fringe benefits, and other contract terms.

Following a hearing, the CIR determined that the fringe benefit issues raised by the parties were moot, but that it nonetheless could and did decide the issue regarding the appropriate salary schedule. The CIR also determined that it was without authority to resolve an issue raised by the parties concerning the inclusion of a deviation clause in the parties' agreement, which clause permitted the District to deviate upward from the agreement's base salary schedule in the course of hiring teachers. In order to resolve the parties' wage dispute, the CIR determined the array of comparable school districts against which contract terms were compared and, based upon this array, established the base salary.

On appeal, the District challenges, in summary, the CIR's determinations concerning the mootness of the fringe benefit issues, the CIR's professed inability to resolve the parties' dispute concerning the deviation clause, and the CIR's selection of the array of comparable school districts. For its cross-appeal, the Association essentially challenges the CIR's refusal to consider the deviation clause.

As explained below, we conclude that the deviation clause is the subject of mandatory bargaining and that the CIR has the authority to consider the parties' dispute over the deviation clause. We therefore reverse the CIR's order to the extent it states that the CIR is without authority to consider the deviation issue in this case. The cause is remanded for such consideration, and our ruling resolves the cross-appeal. The parties' remaining assignments of error are without merit. Accordingly, we affirm in part, and in part reverse the order of the CIR and remand the cause for further proceedings.

## STATEMENT OF FACTS

The relevant facts are essentially undisputed. The District is a Class VI school district, maintaining Hyannis High School, which is located in Hyannis, Grant County, Nebraska, and educating students in grades 7 through 12 under the direction of a single school board. See Neb. Rev. Stat. 79-102(6) (Reissue 2003). For the 2002-03 contract year, the school had 103 students, 21 in grades 7 and 8, and 82 in grades 9 through 12. The District employed 14 staff members.

The Association is a labor organization formed by teachers employed by the District for the purpose of representation in matters of employment relations. See Neb. Rev. Stat. § 48-801(6) (Reissue 2004). On March 5, 2003, the Association filed a petition with the CIR, seeking the resolution of an industrial dispute involving wages and conditions of employment pursuant to the Industrial Relations Act, Neb. Rev. Stat. §§ 48-801 to 48-838 (Reissue 1998 & Cum. Supp. 2002). Specifically, the petition alleged that an "industrial dispute" pursuant to § 48-801(7) existed between the District and the Association, because the parties had negotiated on items concerning wages and other conditions of employment for the 2002-03 contract year, and such negotiations had failed to result in an agreement between the parties. Pending the successful negotiation and execution of an agreement for the 2002-03 contract year, the District had continued to apply the provisions of the last negotiated agreement between the parties, which pertained to the 2001-02 contract year.

The Association's petition came on for hearing before the CIR on June 18, 2003. Prior to the hearing, the parties entered into a pretrial order in which they stipulated to certain facts and to the disputed issues to be presented to the CIR. The parties also stipulated that the last day of school for the 2002-03 contract year was May 23, 2003. The disputed issues identified by the parties included the salary schedule and certain fringe benefits. Another issue identified by the parties was the inclusion of a deviation clause in the agreement. The clause, which had been part of the 2001-02 agreement, provided as follows: "The Board reserves the right to deviate from the agreement if it becomes necessary to hire teachers for a particular position." Although the deviation clause had been a negotiated term in the 2001-02

agreement, the Association sought to have the clause deleted from the 2002-03 contract.

Regarding the array of comparable school districts to be used by the CIR in resolving the parties' industrial dispute, the parties agreed that Garden County, Rushville, Gordon, and Thedford, all of which were Class VI school districts, were comparable. The Association claimed additional comparables were Rock County, West Holt, and Burwell, all of which were Class VI school districts. The District claimed additional comparables were Hay Springs, Hemingford, Chappell, South Platte, Stapleton, Paxton, Mullen, Sandhills, and Cody-Kilgore, all of which were Class III districts, meaning the school district embraced a territory with a population of more than 1,000 and less than 150,000 inhabitants that maintained both elementary and high school grades under the direction of a single school board. § 79-102(3). The District claimed that unlike the Association's comparables, all of the school districts in its array were located within 72 air miles from Hyannis.

The parties stipulated that the "[w]ork, skills, and working conditions of the bargaining unit employees at Rock County, Garden County, Rushville, West Holt, Gordon, Burwell, and Thedford are sufficiently similar to [the Association's] bargaining unit to satisfy the standards set forth in NEB. REV. STAT. § 48-818," but that by so stipulating, the District did not agree that Burwell, Rock County, Thedford, and West Holt should be in the array adopted by the CIR. In its brief on appeal, the District expressed additional misgivings regarding including Gordon in the array.

As stated above, a hearing was held before the CIR on June 18, 2003. Four witnesses appeared and testified, and 39 exhibits were offered into evidence. On January 6, 2004, the CIR issued its findings and order. In summary, the CIR accepted the Association's array of comparable districts. Thus, the seven-district array as determined by the CIR included the four initially agreed-upon districts of Garden County, Rushville, Gordon, and Thedford, and the three contested array districts of Rock County, West Holt, and Burwell. Based upon the array, the CIR concluded there was no clear prevalence to permit the District to change its salary schedule, and utilizing the District's existing salary schedule, the CIR

established the District's base salary of $23,620 for the 2002-03 contract year. The CIR concluded that the fringe benefit issues raised by the parties were moot because the contract year was over, and it was impossible or impractical to retroactively change such benefits. Thus, the CIR did not specifically rule on the substance of the fringe benefit issues. Finally, the CIR determined that unless it was presented with a prevalent array of deviation clauses which happened to be identical in their terms, it was without authority to rule on the parties' dispute over the inclusion of the deviation clause in the contract. As a result, the CIR declined to rule on the appropriateness of the deviation clause.

The District appeals from the CIR's order. The Association has filed a cross-appeal from the CIR's order, essentially limited to the CIR's refusal to rule on the deviation clause.

Additional facts will be set forth below when pertinent to our analysis of the parties' arguments on appeal.

## ASSIGNMENTS OF ERROR

In its appeal, the District assigns seven errors, which we restate as three. The District claims, restated, that the CIR erred (1) in determining that the fringe benefit issues were moot, while not determining the entire contract dispute was moot; (2) in determining that it was unable to resolve the parties' dispute concerning the deviation clause in the contract; and (3) in selecting the appropriate array.

In its cross-appeal, the Association assigns two errors, which we restate as one. The Association claims, restated, that the CIR erred in refusing to resolve the parties' dispute concerning the inclusion of the deviation clause in the contract and in failing to state that a deviation clause would render the parties' contract regarding salaries illusory and void.

## STANDARD OF REVIEW

The parties disagree as to the proper standard of review on appeal in this case. We therefore take this opportunity to state the appropriate standard of review regarding the appeal of a case involving wages and conditions brought under § 48-818.

This case involves an industrial dispute and arises under § 48-818, which authorizes the CIR to enter orders concerning

wages and other conditions of employment. Previously, when considering appeals involving an industrial dispute over wages and conditions of employment, we derived our standard of review from case law and recited the standard as follows:

> In our review of orders and decisions of the [CIR], we are restricted to considering whether the order of that agency is supported by substantial evidence justifying the order made, whether it acted within the scope of its statutory authority, and whether its action was arbitrary, capricious, or unreasonable.

*Lincoln Firefighters Assn. v. City of Lincoln*, 253 Neb. 837, 839, 572 N.W.2d 369, 372 (1998). See, *Hall Cty. Pub. Defenders v. County of Hall*, 253 Neb. 763, 571 N.W.2d 789 (1998); *Douglas Cty. Health Dept. Emp. Assn. v. Douglas Cty.*, 229 Neb. 301, 427 N.W.2d 28 (1988); *IBEW Local 1536 v. City of Fremont*, 216 Neb. 357, 345 N.W.2d 291 (1984); *IAFF Local 831 v. City of No. Platte*, 215 Neb. 89, 337 N.W.2d 716 (1983); *AFSCME Local 2088 v. County of Douglas*, 208 Neb. 511, 304 N.W.2d 368 (1981), *modified* 209 Neb. 597, 309 N.W.2d 65; *American Assn. of University Professors v. Board of Regents*, 198 Neb. 243, 253 N.W.2d 1 (1977).

Contrary to the standard of review noted above, the parties refer us to § 48-825, in which a standard of review was added to the industrial relations statutes. In particular, § 48-825(4) provides as follows:

> Any order or decision of the [CIR] may be modified, reversed, or set aside by the appellate court on one or more of the following grounds and no other:
>
> (a) If the [CIR] acts without or in excess of its powers;
>
> (b) If the order was procured by fraud or is contrary to law;
>
> (c) If the facts found by the [CIR] do not support the order; and
>
> (d) If the order is not supported by a preponderance of the competent evidence on the record considered as a whole.

The question raised in the current appeal is whether the appropriate standard of review in a case involving wages and conditions of employment is that previously set forth by *Lincoln Firefighters Assn., supra*, or whether the standard of review

is that set forth in § 48-825(4). We conclude that § 48-825(4) controls.

Section 48-825(4) was added to the Industrial Relations Act by 1995 Neb. Laws, L.B. 382. By its terms, the standard of review in § 48-825(4) applies to "[*a*]*ny order or decision of the [CIR].*" (Emphasis supplied.) We believe the use of the word "any" in § 48-825(4) signifies broad application of the standard of review enunciated therein. We, therefore, conclude that the standard of review in § 48-825(4) applies to this appeal involving wages and conditions of employment. With reference to § 48-825(4), we note that, subsequent to 1995, we have applied the standard of review set forth in § 48-825(4) to cases involving allegations of prohibited practices under § 48-824. See, *International Union of Operating Engrs. Local 571 v. City of Plattsmouth*, 265 Neb. 817, 660 N.W.2d 480 (2003) (union alleged city failed to bargain in good faith with respect to mandatory topic of negotiation in violation of § 48-824(1)); *Crete Ed. Assn. v. Saline Cty. Sch. Dist. No. 76-0002*, 265 Neb. 8, 654 N.W.2d 166 (2002) (teachers' association alleged school district's negotiator engaged in prohibited practices in violation of § 48-824(2)); *Nebraska Pub. Emp. v. Otoe Cty.*, 257 Neb. 50, 595 N.W.2d 237 (1999) (union alleged county's negotiator engaged in prohibited practices in violation of § 48-824(2)). However, to the extent cases pertaining to wages and conditions such as *Lincoln Firefighters Assn., supra*, and *Hall Cty. Pub. Defenders, supra*, diverge from the standard of review in § 48-825(4), they are disapproved.

█ Accordingly, in our review of orders and decisions of the CIR involving an industrial dispute over wages and conditions of employment, our standard of review is as follows: Any order or decision of the commission may be modified, reversed, or set aside by the appellate court on one or more of the following grounds and no other: (1) if the commission acts without or in excess of its powers, (2) if the order was procured by fraud or is contrary to law, (3) if the facts found by the commission do not support the order, and (4) if the order is not supported by a preponderance of the competent evidence on the record considered as a whole. We apply this standard of review to the instant case.

## ANALYSIS

*CIR Did Not Err When It Determined That Fringe*
*Benefit Issues Were Moot but That Parties'*
*Salary Dispute Was Capable of Resolution.*

The District challenges the CIR's determination that the fringe benefit issues presented to the CIR were moot, but that the salary dispute was nevertheless capable of being decided. As we read the District's assignment of error regarding salary and mootness, the claimed error is limited to the propriety of the CIR's undertaking to make a decision regarding the salary schedule rather than the particular amount of base salary that was determined. We conclude that there is no merit to this assignment of error.

As noted above, in its order, the CIR determined that all benefits issues in the case, "such as health insurance, sick leave, sick leave bank, maternity/paternity leave, academic study leave, and travel leave" were moot because the contract year had ended and that as a result, it would be impossible or impractical to retroactively change such a benefit. The CIR ruled that any determination with regard to these fringe benefits would be merely advisory and that it was not authorized to render advisory opinions. The CIR also concluded, however, that the salary structure question was not moot, because relief could be afforded retroactively if necessary.

■ We have previously recognized "the impossibility or impracticality of retroactively changing fringe benefits for an expired contract year." *Lincoln Firefighters Assn. v. City of Lincoln*, 253 Neb. 837, 845, 572 N.W.2d 369, 375 (1998) (affirming CIR's determination that issues involving fringe benefits such as funeral leave were moot). Moreover, we have stated that "[t]he statutory jurisdiction of the CIR is to settle pending controversies." *NAPE v. Game & Parks Comm.*, 220 Neb. 883, 885, 374 N.W.2d 46, 48 (1985) (citing § 48-810).

When the CIR heard this case, the 2002-03 contract year was completed. The impracticality of changing fringe benefits already exercised for the expired year was evident. Therefore, we conclude that the CIR's decision that the fringe benefit issues were moot was within its powers, not contrary to law, and supported by a preponderance of competent evidence.

In this case, the CIR refused to allow the District to alter its existing salary schedule that was part of the 2001-02 contract. In this connection, we further conclude that there is no merit to the District's claim that if the fringe benefit issues are deemed moot, the salary issue must necessarily be deemed moot. Unlike fringe benefits, issues involving salaries are capable of being given retroactive effect by the CIR. See *Douglas Cty. Health Dept. Emp. Assn. v. Douglas Cty.*, 229 Neb. 301, 427 N.W.2d 28 (1988) (stating that retroactive wage increase was within authority of CIR). We conclude that the CIR's decision that the salary schedule dispute could be resolved was within its powers, not contrary to law, and supported by a preponderance of competent evidence. We conclude this assignment of error is without merit.

*CIR Erred When It Determined That It Was Without Authority to Rule on Inclusion of Deviation Clause in Parties' Contract.*

On appeal, the District challenges the CIR's determination that it was without authority to resolve the parties' dispute concerning the deviation clause in the contract and its consequent refusal to do so. The deviation clause at issue provides as follows: "The Board reserves the right to deviate from the agreement if it becomes necessary to hire teachers for a particular position." Referring to the record and reading the 2001-02 contract as a whole, the deviation clause permits the District to pay a salary in excess of the base salary schedule. We agree with the District that the CIR's decision that it did not have authority to consider the parties' dispute over the deviation clause was contrary to law and that the CIR further erred when it failed to rule on the deviation issue. Accordingly, we reverse the portion of the CIR's order declining to consider the deviation issue and remand the cause with directions to the CIR to consider the deviation issue based on prevalence.

In its order refusing to decide the deviation issue, the CIR indicated that the District did not have a "right" to deviate from the salary schedule because deviation is a mandatory subject of bargaining. The CIR observed that the CIR's orders are not designed to force a party to enter into a contract, but, rather, are a way for the CIR to exercise its power to settle individual disputes. The

CIR also stated that it could not resolve the deviation issue because, for mathematical certainty, the only relevant comparisons "would need to be identical." In this regard, the CIR stated that "unless the [CIR] is presented with a prevalent array of identical contract provisions, the [CIR] will not determine the issue of deviation as one of prevalency."

We agree with the CIR's observation that the parties' dispute over the presence of a deviation clause in the contract is the subject of mandatory bargaining. See *Coleridge Educ. Assoc. v. Coleridge Comm. Schools*, 13 C.I.R. 376 (2001). Pursuant to the Industrial Relations Act, mandatory collective bargaining subjects are those that relate to "wages, hours, and other terms and conditions of employment or any question arising thereunder." § 48-816(1). The Industrial Relations Act requires parties to bargain over mandatory bargaining subjects. *Id.* Teacher salary schedules have historically been the basic framework for teacher contracts and the method by which teacher wages are determined. *Coleridge Educ. Assoc., supra.* Deviation from the salary schedule pursuant to a deviation clause affects those wages. Accordingly, a deviation clause falls under the category of "wages, hours, and other terms of employment or any question arising thereunder," § 48-816(1), and, as the CIR correctly observed, is a subject of mandatory bargaining.

We also agree with the CIR's general observation that its orders are not designed to force a party into a contract, but, rather, are to exercise the CIR's authority to settle disputes. However, because the parties had bargained for the deviation clause in the 2001-02 contract, we disagree with the CIR's implication that ruling on the deviation clause in this case would create a contract where none existed.

In its order, the CIR cited extensively from *Coleridge Educ. Assoc., supra*, in resolving the question of its authority to rule on the deviation issue in this case. After concluding that a deviation clause was a subject of mandatory bargaining, the CIR in *Coleridge Educ. Assoc.* examined the record therein and noted that despite the presence of a deviation provision in the agreement for at least 10 years, "there [was] no evidence" that the deviation provision was bargained for. *Id.* at 386. The CIR in *Coleridge Educ. Assoc.* therefore refused to approve application

of the deviation provision to the teachers' salaries at issue therein. In contrast to *Coleridge Educ. Assoc.*, in the instant case, the parties do not dispute that the deviation clause under consideration was bargained for in the 2001-02 contract year, and such fact is implicit in the CIR's statement that the deviation clause was "placed in the 2001-2002 contract." Unlike *Coleridge Educ. Assoc.*, approval of the deviation clause by the CIR would not force the parties into a contract term where none existed, because such term was previously agreed to. Approval of the deviation clause by the CIR would be in the nature of settling an industrial dispute, which is within the authority of the CIR. Thus, contrary to the CIR's rationale, the deviation clause at issue was bargained for as found by the CIR and capable of application if inclusion of its terms is justified based upon prevalence.

Despite acknowledging the subjective nature of a prevalence analysis, the CIR also stated in its order that "unless the [CIR] is presented with a prevalent array of identical contract provisions, the [CIR] will not determine the issue of deviation as one of prevalency." The CIR's conclusion that a prevalence standard can be used when considering deviation clauses only if the provisions in the array contain identical contract provisions is contrary to law. Accordingly, we reverse this portion of the CIR's order and remand the cause with directions to perform a prevalence analysis.

■ It is clear that the CIR is authorized in industrial disputes involving wage issues to "establish rates of pay and conditions of employment which are comparable to the prevalent wage rates paid and conditions of employment maintained for the same or similar work of workers exhibiting like or similar skills under the same or similar working conditions." § 48-818. See *Lincoln Firefighters Assn. v. City of Lincoln*, 253 Neb. 837, 572 N.W.2d 369 (1998). When discussing the CIR's authority under this provision, this court has acknowledged that "[a] prevalent wage rate to be determined by the [CIR] must almost invariably be determined after consideration of a combination of factors." *Omaha Assn. of Firefighters v. City of Omaha*, 194 Neb. 436, 440, 231 N.W.2d 710, 713 (1975). We have stated that when the members of the array to which the comparison is made "are sufficiently similar and have enough like characteristics or qualities[, then]

comparison [is] appropriate." *Id.* at 441, 231 N.W.2d at 713-14. We apply these principles stated in the context of wage rates to the instant case involving the deviation issue. We do not believe that the use of the word "prevalent" in the context under consideration requires that the employment terms elsewhere be completely identical to the provision at issue. As the CIR observed in its order, a prevalence determination is a subjective determination. The standard inherent in the word "prevalent" is one of general practice, occurrence, or acceptance, and determinations regarding "prevalent" practices are within the field of expertise of the CIR. See *Omaha Assn. of Firefighters, supra.*

Contrary to the reluctance exhibited by the CIR in the instant case, it has in the past considered a deviation clause composed of language similar to the clause at issue, utilizing a prevalence analysis in such consideration. In *Yutan Educ. Ass'n v. Saunders Co. School Dist.,* 12 C.I.R. 68 (1994), the CIR was asked to determine whether a deviation clause that permitted the school district to " 'deviate from the schedule as conditions warrant' " was prevalent. *Id.* at 71. Upon performing a prevalence analysis, the CIR determined that the contracts of 7 of the 11 array members did "not have specific contract language authorizing the school to deviate from the salary schedule, and thus, it is not prevalent to do so." *Id.* In reaching this conclusion, the CIR noted that it had "previously determined the prevalence of similar contract language in the case of *Wayne Education Association v. School District of Wayne,* 9 CIR 281 (1988) [(finding that deviation language was not prevalent and should be stricken)]." *Yutan Educ. Ass'n,* 12 C.I.R. at 71.

In sum, the dispute concerning the inclusion of the deviation clause in the parties' contract for the 2002-03 contract year is a subject of mandatory bargaining. Pursuant to § 48-818, the CIR is authorized to make findings and orders which "establish rates of pay and conditions of employment," and when the CIR acts under its statutory authority pursuant to § 48-818, it ordinarily does so utilizing a prevalence standard. A valid prevalence analysis does not require as a prerequisite a complete identity of provisions in the array. Rather, prevalence involves a general practice, occurrence, or acceptance, as determined by the CIR. We conclude that the portion of the CIR's order stating that it

could not consider the parties' dispute over the inclusion of the deviation clause is contrary to law. Accordingly, given the facts, we reverse that portion of the CIR's order declining to consider the deviation issue and remand the cause to the CIR for consideration of the deviation issue under a prevalence analysis.

*CIR's Selection of Array for Comparability Purposes Was Supported by Preponderance of Competent Evidence and Was Not in Excess of CIR's Powers or Contrary to Law.*

The District maintains that the CIR erred in its selection of the array for comparability purposes. As noted above, the CIR selected seven school districts, of which four had been agreed to as comparable prior to the hearing. The District claims that the CIR failed to select an array that met various factors, including, inter alia, geographic proximity and population size, that could be considered when selecting an array of comparable employers. The District claims that the CIR should have utilized the school districts the District proposed when selecting an array, all of which were within 72 air miles of Hyannis, but not all of which were Class VI schools. The District claims the CIR's refusal to include nine of its proposed school districts resulted in an array which was not supported by a preponderance of the competent evidence. We do not agree.

Under § 48-818, the CIR is empowered to establish rates of pay and conditions of employment which are comparable to the prevalent wage rates paid and conditions of employment maintained for the same or similar work or workers exhibiting like or similar skills under the same or similar working conditions. Section 48-818 requires that the employers selected for a comparative array must be demonstrated to be similar, and we have stated that "[a]s a general rule, it may be said that the factors most often used to determine comparability are geographic proximity, population, job descriptions, job skills, and job conditions." *Lincoln Firefighter Assn. v. City of Lincoln*, 253 Neb. 837, 842, 572 N.W.2d 369, 373 (1998). We have also stated, however, that "[a]bsent a showing that the [entities] considered by the CIR did not present a suitable array, we cannot say that the CIR [erred] in refusing to consider every other or additional [entity], wherever located, which also might be comparable." *Lincoln Co. Sheriff's*

*Emp. Assn. v. Co. of Lincoln,* 216 Neb. 274, 278, 343 N.W.2d 735, 739 (1984). Moreover, the requirement that the CIR select a suitable array does not obligate the CIR "to consider every conceivable comparable [array] but only to consider a sufficient representative array so that the [CIR] can determine whether the wages paid or the benefits conferred are comparable." *Id.*

In the instant case, the CIR determined that when a considerable number of comparables existed in an array of school districts from the same class as the subject district, it did not need to consider other school districts outside of that class for comparison. The CIR then proceeded to review the parties' proposed arrays and found that prior to the hearing, the parties had four Class VI school districts in common. In addition, the CIR noted that prior to the hearing, the District and Association had stipulated, inter alia, that the "[w]ork, skills, and working conditions of the bargaining unit employees at Rock County, Garden County, Rushville, West Holt, Gordon, Burwell, and Thedford are sufficiently similar to [the Association's] bargaining unit to satisfy the standards set forth in NEB. REV. STAT. § 48-818."

The CIR reviewed the Association's proposed array members, all of which were Class VI schools. The CIR noted that the Association's proposed array members, together with the four Class VI common array members, met "the [CIR's] proximity and geographical guidelines." The CIR also reviewed the District's proposed additional array members, noting that none were Class VI schools. Following its review of the parties' proposed arrays, the CIR determined that the Association's proposed array constituted an appropriate array. The CIR therefore concluded that the array for purposes of this case consisted "of the four common array members of Garden County, Rushville, Gordon and Thedford and the contested array members of Rock County, West Holt, and Burwell."

 We have recognized that

> [o]f necessity, determining comparables requires the granting of some discretion to the [CIR], and unless there is no substantial evidence upon which the [CIR] could have concluded that the factors it used resulted in an appropriate array, we may not as a matter of law disallow the [CIR's] determination.

*Lincoln Firefighters Assn.*, 253 Neb. at 843, 572 N.W.2d at 374. "Stated another way, determinations made by the [CIR] in accepting or rejecting claimed comparables [for purposes of establishing an array] are within the field of its expertise and should be given due deference." *Id.* The record contains considerable information regarding the parties' proposed arrays, not repeated here. The CIR's determination is supported by a preponderance of the competent evidence and is not in excess of its powers or contrary to law. There is no merit to this assignment of error.

*District's Remaining Assignments of Error Are Without Merit.*

We have considered the District's remaining assignments of error, and we conclude they are without merit.

*Association's Cross-Appeal Is Resolved by Our Ruling on District's Appeal.*

For its cross-appeal, the Association claims, inter alia, that the CIR erred in determining that it was unable to resolve the parties' dispute concerning the deviation clause in the contract, which clause permits the District to deviate upward from the base salary. We have addressed this argument above, and we agree with the Association that the CIR erred when it concluded it did not have authority to consider the deviation issue. To the extent the Association raises other issues in its cross-appeal, given the posture of this case and our decision to remand the cause to the CIR for further consideration of the parties' claims with regard to the deviation clause based on a prevalence analysis, we need not and do not further comment on the Association's remaining arguments.

## CONCLUSION

We conclude that the CIR did not err in determining that the fringe benefit issues were moot but that the salary dispute was capable of being resolved. We also conclude that the CIR did not err in determining the comparable array for purposes of resolving the issues presented in this industrial dispute. We further conclude, however, that the deviation clause is the subject of mandatory bargaining and that the CIR has the authority to consider the parties' dispute over the deviation clause by performing

a prevalence analysis. Accordingly, we reverse that portion of the CIR's order in which the CIR declined to consider the deviation issue and remand the cause for further proceedings. In all other respects, the order of the CIR is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.