HYANNIS EDUCATION ASSOCIATION, AN UNINCORPORATED ASSOCIATION, APPELLEE, V. GRANT COUNTY SCHOOL DISTRICT NO. 38-0011, ALSO KNOWN AS HYANNIS HIGH SCHOOL, A POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, APPELLANT.

736 N.W.2d 726

Filed August 10, 2007.    No. S-06-300.

Rex R. Schultze, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., for appellant.

Mark D. McGuire, of McGuire & Norby, for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

Heavican, C.J.

## INTRODUCTION

This industrial dispute between the Hyannis Education Association (Association) and Grant County School District No. 38-0011 (District) is before us for the second time. The issue presented by this appeal is whether the Commission of Industrial Relations (CIR) erred when it eliminated a deviation clause from the parties' agreement.

## BACKGROUND

### This Court's Decision in *Hyannis I*

The Association and the District were unable to reach a negotiated agreement for the 2002-03 contract year. As a result, the Association filed a petition with the CIR. This court set forth all the relevant facts in its decision in *Hyannis Ed. Assn. v. Grant Cty. Sch. Dist. No. 38-0011 (Hyannis I)*,[1] and such facts will be repeated here only as necessary.

In its order in *Hyannis I*, the CIR accepted the Association's array of comparable districts and determined that the salary schedule from the parties' 2001-02 contract should be utilized in setting the District's base salary and salary schedule for the 2002-03 contract year. The CIR also concluded that issues relating to fringe benefits were moot and, further, that it could not consider whether it was proper to include a deviation clause in the agreement unless it was presented with an array of deviation clauses identical in their terms. Both the Association and the District appealed.

While this court affirmed the order of the CIR in most respects,[2] we reversed the order with respect to the CIR's authority regarding the inclusion of a deviation clause. We concluded that

> [a] valid prevalence analysis does not require as a prerequisite a complete identity of provisions in the array. Rather, prevalence involves a general practice, occurrence, or acceptance, as determined by the CIR. We conclude

---

[1] *Hyannis Ed. Assn. v. Grant Cty. Sch. Dist. No. 38-0011*, 269 Neb. 956, 698 N.W.2d 45 (2005).

[2] *Id.*

that the portion of the CIR's order stating that it could not consider the parties' dispute over the inclusion of the deviation clause is contrary to law. Accordingly, given the facts, we reverse that portion of the CIR's order declining to consider the deviation issue and remand the cause to the CIR for consideration of the deviation issue under a prevalence analysis.[3]

## CIR PROCEEDINGS FOLLOWING REMAND

Upon remand, the issue presented to the CIR was whether the deviation clause in question was prevalent. The language of that clause reads as follows: "The Board reserves the right to deviate from the agreement if it becomes necessary to hire teachers for a particular position." This same language had been included as a negotiated term in the parties' 2001-02 agreement.

The District contended that because four of the seven schools in its array allowed deviation from the salary schedule, albeit under varying circumstances, deviation was prevalent. In essence, the District suggested that deviation be defined broadly. The Association, however, argued that deviation should be defined more narrowly to reflect the distinction between the open-ended deviation proposed by the District and defined deviation. Because open-ended deviation clauses were not prevalent in the array selected by the CIR, the Association asserted that the District's proposed clause should not be included in the parties' contract.

The CIR found for the Association. In so finding, the CIR defined deviation to include only those clauses that "permit[ed] a departure from the bargained for and agreed upon contract, upon defined criteria and/or specific standards, that have been bargained for and agreed upon by the parties." In conducting its prevalency analysis, the CIR was presented with the following deviation language as quoted from the other schools' contracts in the District's array.

**Burwell:**

> In the event that a new teacher cannot be hired on the basis of the adopted schedule and it is necessary to raise

---

[3] *Id.* at 968-69, 698 N.W.2d at 56.

the base, all the teachers in the system shall be placed on the new schedule and salaries adjusted accordingly. If a position has not been filled by August 1, however, the Board reserves the right to exceed the schedule for the new teacher only if it is necessary to do so to fill the position.

**Garden County:**

The salary schedule shall not be construed as being contractual and no teacher employed by the district shall have claims, demands, or course of action of [sic] reason of the provisions. Furthermore, the Board reserves the right to make necessary adjustments in order to meet emergencies which may arise.

**Gordon:** No deviation language in contract.

**Rock County:**

New Graduates may be placed on Step Two if the number of applicants is one.

**Rushville:** No deviation language in contract.

**Thedford:**

Although the Board of Education will endeavor to abide by the Salary Schedule in every instance in employing and reemploying teachers, it does reserve the right to depart from the schedule when it deems the best interest of the school may be served by doing so.

**West Holt:**

The district retains the authority to provide extra compensation for special assigned work and requested services.

The CIR found that only Rock County met its definition of deviation in the context of a school wage case. As only one of the seven schools in the District's array allowed deviation which met the CIR's definition, the CIR concluded that deviation was not prevalent.

The CIR also noted that the District's proposed deviation clause was not "sufficiently similar" to the deviation clauses included in the negotiated agreements of the other schools in the array. As such, the CIR ordered the deviation clause eliminated from the 2002-03 contract.

The District now appeals the CIR's determination.

## ASSIGNMENT OF ERROR

The District assigned seven assignments of error, which can be restated as one: The CIR erred in finding that the deviation clause in question was not prevalent and eliminating it from the parties' 2002-03 agreement.

## STANDARD OF REVIEW

■ In our review of orders and decisions of the CIR involving an industrial dispute over wages and conditions of employment, our standard of review is as follows: Any order or decision of the CIR may be modified, reversed, or set aside by the appellate court on one or more of the following grounds and no other: (1) if the CIR acts without or in excess of its powers, (2) if the order was procured by fraud or is contrary to law, (3) if the facts found by the CIR do not support the order, and (4) if the order is not supported by a preponderance of the competent evidence on the record considered as a whole.[4]

## ANALYSIS

In *Hyannis I*, we remanded this cause to the CIR "for consideration of the deviation issue under a prevalence analysis."[5] In doing so, we held that contract terms relating to deviation need not be identical in order to be prevalent, and noted that in the context of a prevalent wage rate, "when the members of the array to which comparison is made 'are sufficiently similar and have enough like characteristics or qualities[, then] comparison [is] appropriate.'"[6]

We conclude that under the circumstances presented, the CIR erred in concluding that deviation was not prevalent. The record presented to this court contains the deviation clauses in the negotiated agreements of the other schools in the District's array. Although these clauses vary in their construction, each has a common thread: Each district with such a clause has the ability to depart, or deviate from, the salary schedule included in the negotiated agreement.

---

[4] *Hyannis I, supra* note 1.

[5] *Id.* at 969, 698 N.W.2d at 56.

[6] *Id.* at 967, 698 N.W.2d at 55.

■ This commonality is consistent with the generally understood definition of "deviation." Webster's dictionary defines deviation as the "departure from an established body of principles, a system of beliefs, an ideology, or a party line,"[7] while Black's dictionary defines deviation as "a change from a customary or agreed-on course of action."[8] We conclude that "deviation" in a school wage case is the ability to depart from the salary schedule included in the parties' contract.

This definition is also consistent with our statement in *Hyannis I* that contract terms need not be identical to be considered in a prevalency analysis, but instead need only be "'sufficiently similar and have enough like characteristics or qualities.'"[9] In comparing the deviation language of the other schools to the language proposed by the District, the CIR found that none of the clauses presented were sufficiently similar. In doing so, the CIR rejected the basic similarity of all of the clauses, that each allowed a departure from the salary schedule.

Given our conclusion that the CIR did not apply the correct definition of deviation to the record in this case, it would ordinarily be necessary for the CIR to make further factual findings regarding the prevalency of deviation clauses in the array. However, such action is not necessary here. As outlined below, certain factual findings in the CIR's order allow this court to apply the correct definition of deviation to the record in order to make a determination regarding prevalency.

In table 1 of its order, the CIR noted a distinction between "'Deviation' clauses with defined terms" and those "without defined terms." Implicitly, then, the CIR acknowledged that both clauses dealt with deviation in its general sense. We conclude that the schools categorized by the CIR as having either type of deviation clause should be considered in a prevalency analysis. On the record before us, four of the schools in the District's array—Burwell, Garden County, Rock County, and Thedford—allow deviation from the salary schedule. And yet

---

[7] Webster's Third New International Dictionary, Unabridged 618 (1993).

[8] Black's Law Dictionary 482 (8th ed. 2004).

[9] *Hyannis I, supra* note 1, 269 Neb. at 967, 698 N.W.2d at 55.

another district, West Holt, has language in its agreement that could arguably be considered deviation language.

In *Hyannis I,* we reaffirmed that "[t]he standard inherent in the word 'prevalent' is one of general practice, occurrence, or acceptance . . . ."[10] Where at least four of the seven schools in the District's array have negotiated agreements which contain deviation clauses, such a practice is prevalent. Because such practice is prevalent, the deviation clause should be included in the parties' contract for 2002-03. The CIR's order to eliminate the clause was contrary to law and was not supported by a preponderance of the competent evidence on the record considered as a whole. We therefore reverse the CIR's order eliminating the clause, and remand this cause to the CIR with instructions to include the clause in the parties' 2002-03 contract.

The District makes several additional arguments, all relating to the assertion that the CIR erred in concluding that deviation was not prevalent. Because we agree with the District that the CIR erred in eliminating the provision, we need not consider the District's remaining arguments.

MOOTNESS

We note that the Association contends this appeal is moot as a result of the enactment of 2005 Neb. Laws, L.B. 126. The Association argues that due to L.B. 126, both the District and the Association ceased to exist as legal entities. Although the Association acknowledges that legal entities bearing the same names exist, it contends that those entities are not the same legal entities which were the original parties to this industrial dispute.

We disagree with the Association. We have reviewed the record, including those public records of which the parties stipulated we could take judicial notice, and conclude that this appeal is not moot.

CONCLUSION

We conclude the CIR erred in finding that deviation was not prevalent among the schools in the District's array. As such, the

---

[10] *Hyannis I, supra* note 1, 269 Neb. at 968, 698 N.W.2d at 55.

CIR erred in eliminating the proposed deviation clause from the parties' 2002-03 contract.

REVERSED AND REMANDED WITH DIRECTIONS.