TRANSPORT WORKERS UNION OF AMERICA LOCAL 223,
APPELLANT, V. THE TRANSIT AUTHORITY OF THE CITY
OF OMAHA, NEBRASKA, DOING BUSINESS AS METRO AREA
TRANSIT, APPELLEE.

344 N.W.2d 459

Filed February 10, 1984. No. 83-606.

Thomas F. Dowd and John P. Fahey of Dowd, Fahey & Ashford, and J. Patrick Green, for appellant.

Soren S. Jensen and J. Russell Derr of Erickson, Sederstrom, Leigh, Eisenstatt, Johnson, Kinnamon, Koukol & Fortune, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

In this appeal we are asked to determine what, if any, authority the Commission of Industrial Relations (CIR) has to enter temporary orders concerning wages, hours, and terms and conditions of employment while the CIR is attempting to resolve a labor dispute pending before it. The trial court, in its order entered on July 29, 1983, found that the CIR's authority to enter a temporary order was limited. The trial court held that the CIR could not order a governmental employer to maintain the employee's wages, hours, or terms and conditions of

employment during a dispute. According to the trial court, the CIR could only order an employer to refrain from discharging an employee. We believe that the district court was in error in this regard and that the order of the district court must be reversed and the cause remanded.

The appellant, Transport Workers Union of America Local 223 (Transport Workers), and the appellee, The Transit Authority of the City of Omaha, Nebraska, doing business as Metro Area Transit (MAT), had previously entered into an existing collective bargaining agreement which expired on June 30, 1983. At the expiration of that agreement MAT notified its employees as follows: "Effective Midnite, June 30, 1983, the contract between TWU Local 223, and MAT expired.

"There is no agreement for a Contract extension. As a result, any restrictions on management and operating rights, contained in the Contract, are no longer in effect.

"For the present, wages and fringes will be continued at the existing levels." MAT's bargaining representative indicated, during negotiations, that MAT might institute changes in working conditions following the expiration of the agreement, and, in fact, MAT did change certain practices with respect to paying tool and clothing allowances to its employees.

Transport Workers then filed a petition with the CIR, seeking to invoke the authority of the CIR to help resolve the labor dispute which existed between Transport Workers and MAT. Transport Workers also filed a motion for a temporary order with the CIR. On July 12, 1983, a hearing was held on the motion, and on July 13, 1983, the CIR entered an order, pursuant to the provisions of Neb. Rev. Stat. §§ 48-816(1) and 48-811 (Cum. Supp. 1982), directing that "the employment status of employees shall not be altered in any way pending disposition of the Petition herein by the Commission." While the lan-

guage of the order, standing alone, may seem vague, when one reads the entire order entered by the CIR, including its findings and its reference to both §§ 48-811 *and* 48-816(1), it is clear that the CIR intended, by its order of July 13, 1983, to order MAT not to alter any of the wages, hours, or terms and conditions of employment during the time that the parties were attempting to resolve their dispute, without first obtaining authority from the CIR. After the order was entered by the CIR, MAT then altered its "pick system," which is essentially a system whereby drivers are allowed to bid on routes and times of work.

Transport Workers filed an action in the district court for Douglas County, Nebraska, seeking enforcement of the CIR's temporary order. See *IBEW Local 763 v. Omaha P.P. Dist.*, 209 Neb. 335, 307 N.W.2d 795 (1981). After a hearing the district court for Douglas County, Nebraska, denied the relief sought by the Transport Workers, on the grounds that the order of the CIR was beyond the jurisdiction of the CIR, finding specifically that the CIR's authority under § 48-811 was limited solely to restraining the employer from terminating the employee. While it is true, as noted by MAT, that the authority of the CIR is limited to that granted to it by legislative act and that such authority, when granted, must be narrowly construed, see *University Police Officers Union v. University of Nebraska*, 203 Neb. 4, 277 N.W.2d 529 (1979), it is likewise true that one may not, when reading the clear meaning of the statutes, simply read out of the statutes that which is clearly there.

There are several provisions of the CIR act which clearly grant to the CIR the authority to act as it did in this case. The trial court, at the urging of MAT, concluded that the provisions of § 48-811 did not grant to the CIR the authority to enter temporary orders concerning wages, hours, or terms and conditions of employment pending the resolution of an in-

dustrial dispute. We believe that this conclusion standing alone is correct. Section 48-811 provides in part: "No adverse action by threat or harassment shall be taken against any employee because of any petition filing by such employee, and the *employment status* of such employee shall not be altered in any way pending disposition of the petition by the commission." (Emphasis supplied.) We think it clear that the meaning of the words "employment status" in § 48-811 means precisely what it says. That is, no employer may, without cause, change an employee's status as an employee under the provisions of § 48-811, pending disposition of the petition.

If § 48-811 were the only provision relevant to this discussion, then the argument made by MAT might be correct. However, § 48-811 is not the only authority. Section 48-816 provides in part: "The commission shall have power and authority upon its own initiative or upon request of a party to the dispute to make such temporary findings and orders as may be necessary to preserve and protect *the status of the parties, property and public interest involved, pending final determination of the issues.*" (Emphasis supplied.) MAT argues that § 48-816 is nothing more than a repeat of § 48-811. However, a simple reading of the statute makes it clear that such could not be the case. In the first instance, the reference in § 48-816 is to "parties." Certainly this cannot mean the employer. Obviously, the employer is not concerned that the employee will discharge the employer. Therefore, if the CIR has authority to make temporary orders to protect "the status of the parties," it obviously must have authority to do something more than simply make sure that the employer does not fire the employee, as referred to in § 48-811. And, likewise, protecting the property and public interest obviously means something more than preserving the employment status. It may very well be that it is in the public interest to be assured that public employees, who do not have the

right to strike or hinder, delay, limit, or suspend the continuity or efficiency of governmental services, should continue to receive their previous salaries or be afforded the same terms and conditions of employment while the employer, the employee, and the CIR attempt to resolve the differences. See Neb. Rev. Stat. § 48-821 (Reissue 1978). Whatever preserving and protecting the public interest may mean, it obviously means something more than simply preventing the discharge of a public employee by a public employer.

Furthermore, Neb. Rev. Stat. § 48-819.01 (Cum. Supp. 1982) has a bearing here. Section 48-819.01 provides: "Whenever it is alleged that a party to an industrial dispute has engaged in an act which is in violation of any of the provisions of sections 48-801 to 48-838, or which interferes with, restrains, or coerces employees in the exercise of the rights provided in sections 48-801 to 48-838, the commission shall have the power and authority to make such findings and to enter such temporary or permanent orders as the commission may find necessary to provide adequate remedies to the injured party or parties, to effectuate the public policy enunciated in section 48-802, and to resolve the dispute." It seems clear to us that reducing employees' wages or changing the hours or terms and conditions of employment during an industrial dispute might interfere with or coerce employees attempting to exercise their right to bargain under the provisions of the act. That would explain the reason the Legislature granted to the CIR the authority to enter temporary orders necessary to retain the status quo of the parties while the dispute is resolved. See *University Police Officers Union v. University of Nebraska*, 203 Neb. 4, 277 N.W.2d 529 (1979). MAT argues that while an individual employee cannot be demoted or terminated, or threatened with demotion or termination, nevertheless, the public employer may adjust the terms or conditions of employment. We see little difference be-

tween demoting an employee and simply reducing his wages or changing his hours or terms and conditions of employment until he finds his employment unbearable. Obviously, this is not what is intended by the nature of the act. To be sure, the authority of the CIR to enter temporary orders is not unlimited. As we noted in *University Police Officers Union v. University of Nebraska, supra* at 18, 277 N.W.2d at 537: ''We will not now attempt to enumerate all the possible circumstances under which the CIR may exercise its authority. We do note, however, that the authority granted to the CIR under the present act in general and section 48-816, R.R.S. 1943, in particular, is limited in nature. We would anticipate that the CIR will exercise that jurisdiction in as narrow a manner as may be necessary.'' The authority does, however, appear to us to be sufficient in this case. To hold otherwise would be to completely repeal §§ 48-816 and 48-819.01 by judicial fiat.

MAT further argues that permitting the CIR to enter temporary orders retaining the status quo of the parties would be, in effect, compelling the parties to continue a contract which had expired. We do not agree. To begin with, there may never be any ''contract'' in the sense of a complete document executed by both of the parties. The act makes it quite clear that the CIR cannot compel the governmental employer to enter into a contract if the governmental employer chooses not to do so. See Neb. Rev. Stat. § 48-810.01 (Reissue 1978). Nevertheless, even though the CIR cannot compel the governmental employer to enter into a contract, it is clear that the CIR can enter a final order setting wages, hours, and terms and conditions of employment which are binding upon the employer, and which, in every sense, is therefore a contract, though none may formally exist between the parties. Likewise, in the present instance, while the bargaining agreement between the parties may have expired, the employment contract between the parties goes on. The em-

ployees continue to provide services, and the employer is obligated to continue to make some payment. The act in question simply grants to the CIR discretionary authority, when it appears appropriate, to order that the status quo of the parties be retained until the dispute is resolved. The employee may not be entitled to insist on changes in wages, hours, or terms and conditions of employment, and the employer, on the other hand, may be required to continue making payment and providing terms and conditions of employment identical to those which existed prior to the dispute. When so ordered by the CIR in its discretion, it may very well be that it will preserve the interests of the public and will fulfill the public policy of the act to ensure the uninterrupted and continued functioning and operation of governmental services.

We therefore believe that the district court should have entertained the request made by the Transport Workers and should have entered appropriate orders carrying out the orders previously entered by the CIR. The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.