783 N.W.2d 600 (2010)
280 Neb. 27
CENTRAL CITY EDUCATION ASSOCIATION, an unincorporated association, appellee,
v.
MERRICK COUNTY SCHOOL DISTRICT NO. 61-0004, also known as Central City Public Schools, a political subdivision of the State of Nebraska, appellant.
No. S-09-521.
Supreme Court of Nebraska.
June 18, 2010.
*603 Kelley Baker and Steve Williams, of Harding & Shultz, P.C., L.L.O., Lincoln, for appellant.
Mark D. McGuire, of McGuire & Norby, Lincoln, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
PER CURIAM.

I. INTRODUCTION
This industrial dispute is between the Central City Education Association (CCEA) and Merrick County School District No. 61-0004, also known as Central City Public Schools (District). A complaint was filed with the Commission of Industrial Relations (CIR) after the CCEA and the District were unable to reach a negotiated agreement for the 2008-09 contract year. The CIR entered an order setting forth the disputed terms of the parties' agreement. The District appeals. We affirm in part, and in part reverse and remand.

II. STATEMENT OF FACTS
The CCEA filed a complaint with the CIR on December 2, 2008, after it and the District were unable to reach an agreement regarding the terms of their 2008-09 negotiated agreement. As relevant to this appeal, there were two disputes between the parties: the inclusion of contract continuation language and the removal of language providing that the District would pay teachers for unused sick and personal leave.
The following array was set: Adams Central, Aurora, Boone Central, Centennial, Centura, Cross County, Doniphan-Trumbull, Grand Island Northwest, Columbus Lakeview, St. Paul, Sutton, Twin River, Wood River Rural, and York. Following a hearing, the CIR issued an order on April 21, 2009, providing that contract continuation language was prevalent in the District's array, but that pay for unused sick and personal leave was not. Therefore, the CIR ordered that contract continuation language be included in the contract, but pay for unused sick and personal leave be deleted. Pursuant to a request by the CCEA, the CIR later reconsidered its decision to delete the language relating to pay for unused sick and personal leave, and on May 3, it issued a "Final Order," finding that such language was prevalent and should remain in the parties' agreement.

*604 III. ASSIGNMENTS OF ERROR
On appeal, the District assigns, restated and consolidated, that the CIR (1) exceeded its authority by including the contract continuation clause in the parties' agreement and (2) erred by finding payment for unused sick and personal time prevalent in the District's array.

IV. STANDARD OF REVIEW
In our review of orders and decisions of the CIR involving an industrial dispute over wages and conditions of employment, our standard of review is as follows: Any order or decision of the CIR may be modified, reversed, or set aside by the appellate court on one or more of the following grounds and no other: (1) if the CIR acts without or in excess of its powers, (2) if the order was procured by fraud or is contrary to law, (3) if the facts found by the CIR do not support the order, and (4) if the order is not supported by a preponderance of the competent evidence on the record considered as a whole.[1]

V. ANALYSIS

1. WHETHER CIR EXCEEDED ITS AUTHORITY IN ORDERING INCLUSION OF CONTRACT CONTINUATION LANGUAGE
In its first assignment of error, the District assigns, restated and consolidated, that the CIR exceeded its authority by ordering the inclusion of contract continuation language in the parties' agreement. The language in question provides that "`[t]his Agreement shall continue in full force and effect until a successor agreement is adopted which is then retroactive to the beginning of that school year.'"
The District makes several arguments in support of its assignment, which we have restated and consolidated. First, the District argues that the contract continuation clause is a topic of permissive, not mandatory, bargaining and thus exceeds the CIR's authority. The District also complains that in ordering the agreement to include the contract continuation clause, the CIR issued an order affecting a future contract year and thus entered a declaratory judgment, which also exceeds its authority. In addition, the District also contends that the CIR violated Neb.Rev.Stat. §§ 48-810.01 (Reissue 2004) and 79-515 (Reissue 2008) by ordering it to enter into a contract and violated public policy by issuing an order that prevents the District from exercising its authority to implement a final order after reaching an impasse.

(a) Mandatory Topic of Bargaining
We turn first to the question of whether the contract continuation language is a mandatory or permissive topic of bargaining. The CIR is an administrative agency empowered to perform a legislative function and, as such, has no power or authority other than that specifically conferred on it by statute or by a construction thereof necessary to accomplish the purposes of the act establishing the CIR.[2] And under Neb.Rev.Stat. § 48-818 (Reissue 2004), orders of the CIR may establish or alter the scale of wages, hours of labor, or conditions of employment, or any one or more of the same. In other words, the CIR may decide mandatory topics of bargaining, but has no authority to determine permissive topics of bargaining.
The issue presented in this case is whether the contract continuation clause ordered by the CIR deals with hours, *605 wages, or terms and conditions of employment such that it is mandatorily bargainable. We conclude that it is.
This court, in Hyannis Ed. Assn. v. Grant Cty. Sch. Dist. No. 38-0011,[3] addressed the issue of whether deviation from a salary schedule was mandatorily bargainable. We concluded that it was, noting that "[t]eacher salary schedules have historically been the basic framework for teacher contracts and the method by which teacher wages are determined. ... Deviation from the salary schedule pursuant to a deviation clause affects those wages."[4]
We find Hyannis Ed. Assn. helpful in reaching our conclusion that the contract continuation clause in this case is mandatorily bargainable. In the same way that deviation relates to wages, we conclude that contract continuation relates to hours, wages, and terms and conditions of employment, because such a clause keeps in effect previously agreed-upon (or ordered) contract terms, including those which are mandatorily bargainable, until a new agreement can be reached.
And this conclusion is supported by other case law. The court in Mtr. of Incorporated Vil. of Lynbrook v. PERB[5] concluded that the issue of a "`continuation of benefits clause'" was mandatorily bargainable and not a violation of public policy. And private sector cases have concluded that the duration of a collective bargaining agreement is mandatorily bargainable.[6]
Lending further support to our conclusion is this court's decision in Metro. Tech. Com. Col. Ed. Assn. v. Metro. Tech. Com. Col. Area,[7] where we noted:
A matter which is of fundamental, basic, or essential concern to an employee's financial and personal concern may be considered as involving working conditions and is mandatorily bargainable even though there may be some minor influence on educational policy or management prerogative. However, those matters which involve foundational value judgments, which strike at the very heart of the educational philosophy of the particular institution, are management prerogatives and are not a proper subject for negotiation even though such decisions may have some impact on working conditions. However, the impact of whatever decision management may make in this or any other case on the economic welfare of employees is a proper subject of mandatory bargaining.
We conclude that a contract continuation clause, because it continues the provisions of an existing contract until a new contract can be reached, including the salary schedule of the preceding agreement, is of "fundamental, basic, or essential concern to an employee's financial and personal concern."[8]
Moreover, we conclude that the contract continuation clause at issue is not a matter "which involve[s] foundational value judgments, which strike at the very heart of the educational philosophy of the particular *606 institution."[9] Matters that have been found to be of this nature include an employer's decision to hire, retain, promote, transfer, or dismiss employees[10]; the establishment of a pension plan[11]; a change in a school calendar[12]; or teacher appointment determinations.[13]
We conclude that the contract continuation clause at issue was mandatorily bargainable. The District's argument to the contrary is without merit.

(b) Effect Not in Present, but in Future Contract Years
We turn next to the question of whether the CIR erred in issuing a decision that affects not the current contract year but subsequent contract years. Intertwined with this issue is the District's argument that the CIR's inclusion of the contract continuation language amounted to a declaratory judgment or advisory opinion.
We have noted that "`[t]he function of a declaratory judgment is to determine justiciable controversies which either are not yet ripe for adjudication by conventional forms of remedy or, for other reasons, are not conveniently amenable to the usual remedies.'"[14] And we have repeatedly noted that the CIR does not have the authority to grant declaratory relief.[15] But in this case, we conclude that the contract continuation clause had an effect in the current contract year; thus, the decision was ripe for adjudication and was not a declaratory judgment.
The CCEA presented evidence in the form of testimony by Tory Tuhey, a union employee with the Nebraska State Education Association. Tuhey testified that there is contract continuation language in the collective bargaining agreement between the state education association and its bargaining unit. Tuhey indicated that the presence of that language affects her in that it provides stability in salary and budgeting; she knows what wage she will be earning until a new agreement is reached. This evidence supports the CIR's conclusion that the contract continuation clause had an effect in the current contract year. We therefore conclude that the District's argument that the CIR was issuing declaratory relief is without merit.

(c) §§ 48-810.01 and 79-515
The District next argues that the CIR erred in including the contract continuation language, because doing so violated §§ 48-810.01 and 79-515. Section 48-810.01 provides that "[n]otwithstanding any other provision of law, the State of Nebraska and any political or governmental subdivision thereof cannot be compelled to enter into any contract or agreement, written or otherwise, with any labor organization concerning grievances, labor disputes, rates of pay, hours of employment or conditions of work." And § 79-515 provides:

*607 The school board or board of education of any school district may enter into contracts under such terms and conditions as the board deems appropriate, for periods not to exceed four years ... for collective-bargaining agreements with employee groups. This section does not permit multiyear contracts with individual school district employees.
The District contends that § 48-810.01 was violated when the CIR ordered that the District enter into a contract with the CCEA for a future contract year and that § 79-515 was violated because the District was ordered to enter into a contract of indefinite duration by the inclusion of the contract continuation clause.
We conclude that the District misunderstands the effect of the contract continuation clause. Such a clause neither orders the District to enter into a contract nor acts as a contract for an indefinite term. Instead, the effect of the clause is to set forth the terms of the parties' agreement until a new agreement can be reached. We conclude that the CIR did not violate § 48-810.01 or § 79-515. The District's argument is without merit.

(d) Public Policy
Finally, the district argues that the CIR violated public policy when it ordered the contract continuation clause.
The CIR's order (1) requires the District to negotiate upon the CCEA's terms or continue under the previous terms indefinitely, (2) lessens the incentive to bargain in good faith toward an agreement, and (3) deprives the District of its lawful right to implement a final offer after reaching an impasse in negotiations but prior to the CCEA's filing a petition with the CIR. The order undermines the Legislature's determination to authorize the District to implement its final offer upon impasse as well as appellate court decisions approving this process.
The District cites to Transport Workers v. Transit Auth. of Omaha[16] and argues that it "supports a board of education's authority to implement its final offer after impasse and before the association has filed an action in the [CIR]."[17]
We find Transport Workers inapplicable. In that case, we concluded that the CIR could issue orders "providing terms and conditions of employment identical to those which existed prior to the dispute."[18] Thus, we agree that this case supports the proposition that the CIR has the authority to maintain the status quo pending the resolution of a dispute. However, in Transport Workers, we did not opine as to the source of those existing terms and conditions. We conclude that Transport Workers does not speak to the authority of management to implement its last best offer before impasse.
The District also relies on two prior CIR orders in General Drivers & Helpers Union, Local No. 554 v. Saunders County, Nebraska,[19] and Lincoln County Sheriff's Employees Association Local No. 546 v. County of Lincoln.[20] The District implies *608 that both support the proposition that it was a "lawful, management prerogative" for the District to unilaterally implement a bargaining offer after impasse but before a proceeding is initiated in the CIR and that the CIR "may not deprive an employer of that right by ordering a `continuation clause.'"[21] While these cases do recognize the first part of the District's argument, they do not support the secondin fact, neither of these cases discusses continuation clauses. Moreover, we note that the CIR concluded in Clarkson Educ. Ass'n v. Colfax Co. School Dist.[22] that it did have the authority to order such a continuation clause.
The District directs us to no other authority which would support the conclusion that it has an unlimited management prerogative to implement its final offer before impasse and that the inclusion of a contract continuation clause would impact that right. Nor has this court been able to find any other authority to support that assertion.
We also note the District suggests that the reasoning behind the policy to implement its final offer before impasse is to level the playing field between it and the CCEA. The District suggests that the CCEA is at an unfair advantage if the starting point in negotiations is with the CCEA's terms. This overlooks the fact that the terms and conditions which are continued are those which either were agreed to by the parties during their prior negotiations or were imposed upon both parties by the CIR, and thus are not the CCEA's "terms" at all. Moreover, giving the District the right to unilaterally implement its offer could be seen as giving it the upper hand, in that during negotiations, the CCEA would always be aware that the District had the ability to declare impasse, implement its own terms and conditions, and force the CCEA to appeal to the CIR if it wishes to change those terms and conditions.
We conclude that the District's argument that the CIR's inclusion of the contract continuation clause was a violation of public policy is without merit. We further conclude that the CIR had the authority to include a contract continuation in the parties' 2008-09 agreement. Because the District does not contest the conclusion that such a clause was prevalent within the array, we affirm the decision of the CIR with regard to the inclusion of the contract continuation clause.

2. WHETHER PAY FOR UNUSED SICK AND PERSONAL LEAVE IS PREVALENT
In its second assignment of error, the District argues that the CIR erred in finding that paying teachers for unused sick and personal leave was prevalent. We have said that the "standard inherent in the word `prevalent' is one of general practice, occurrence, or acceptance" and that contract terms need only be "`sufficiently similar and have enough like characteristics or qualities'" in order to be considered prevalent.[23]
The language in question provides in part:
Any teacher having served the [District] for 10 or more years shall receive severance pay for each day of accumulated, unused sick leave or personal leave at the rate of one-third (1/3) of his/her daily earnings are to be based on the amount of the last contract, and the number of service days on the contract.
*609 At least 10 of the 14 schools in the District's array have some sort of provision requiring payment for unused sick and personal leave as follows:
Adams Central: "Unused personal leave days will be compensated at a rate of $80 per day."
Aurora:
All unused Sick Leave and Personal Leave days shall accumulate. Teachers who have taught five or more years in the Aurora Public Schools shall receive severance pay upon ceasing employment with the Aurora School District. Such pay shall be for each day of accumulated sick and personal leave at a rate of one-fourth (1/4) of the teacher's daily earnings.
Boone Central: "In a given year, a staff member may trade 2 sick days in for 1 additional personal day."
Centennial: "If six (6) or less sick leave days are used during the contract year, the teacher will be reimbursed one (1) day of the substitute teacher rate of pay. ... Unused personal leave days will be reimbursed at the substitute rate of pay. ..."
Centura:
If the employee does not use two (2) personal days, the district will buy back both days at the substitute pay rate. If the employee uses only one (1) personal day, the remaining day may be rolled over to the next year, and the employee begins the year with three (3) personal days. (The day must be rolled over and will not be bought back.)
Cross County:
Payment for Unused Sick Leave Days at Separation
Should a teacher, at the time of separation from the district, and having a minimum of five years with the district, have accumulated unused sick leave days, the teacher will be entitled, on or before June 15th immediately following the school year, to turn back to the school district [his or her] unused sick days and shall be paid by the School District fifty dollars ($50.00) each for two-thirds (2/3) of the days the teacher is entitled to. ...
Payment for Unused Sick Leave Days Continuing Employee
Option I: Should a teacher, as of the last duty day of any school year, accumulate more than forty (40) unused sick leave days, the teacher will be entitled, on or before the June 15th immediately following the school year, to turn back to the school district any unused sick days in excess of forty (40) days, and shall be paid by the School district twenty dollars ($20.00) for each day the teacher is entitled to. ...
Option II: Should a teacher, as of the last duty day of any school year, accumulate forty-three (43) or more sick days, the teacher will be entitled, on or before June 15th immediately following the school year, to turn back to the school district any unused sick days in excess of forty (40) days, and shall be granted one additional Personal Day for the following school year.
Doniphan-Trumbull:
Employees with a balance in excess of 45 days at the end of the contract year will be paid at 25% of the employee's daily rate of pay for each day in excess of 45.
. . . .
... Teachers ... will be reimbursed at the end of the contract period $100 for each day of the unused leave.
Grand Island Northwest:
District #82 will pay for unused sick leave in excess of fifty (50) days cumulative sick leave at the rate of $50.00 per *610 day. The maximum number of days that can be paid is ten (10) days. ...
. . . .
... District # 82 will reimburse unused personal leave in excess of two (2) days cumulative personal leave at the rate of $50.00 per day. The maximum number of days for reimbursement would be (2) days unless the teacher is resigning from the district, and then the maximum number of days would be four (4).
Columbus Lakeview:
Upon leaving the system, a teacher will be compensated up to a maximum of thirty (30) accumulated sick leave days. The District's sick leave buy-back policy does not apply to the personal sick leave bank days. The rate of compensation will be based on fifty (50) percent of a substitute's rate of pay at the time of separation.
St. Paul: No language allowing payment for unused sick and personal leave in contract.
Sutton:
At the end of each school year a teacher who has accumulated more than 50 days of sick leave will be given a stipend of $10 for each day in excess of 50 days.
... A teacher shall choose to have unused personal leave days added to [his or her] cumulative sick leave or reimbursed at the rate of 75% of the substitute rate of pay.
Twin River:
The teacher will be entitled on or before June 15th immediately following the end of the school year to turn back to the School District a maximum of ten (10) sick leave days. The School District shall then pay fifteen dollars ($15) for each day the teacher is entitled. ...
... A teacher leaving the school system will receive fifteen dollars ($15) per day to a maximum of thirty (30) sick leave days for each day of unused accumulated sick leave.
Wood River Rural: No language allowing payment for unused sick and personal leave in contract.
York: No language allowing payment for unused sick and personal leave in contract.
Plainly, pay for unused leave is permitted by 10 of the 14 schools in the District's array. We therefore agree with the CIR and the CCEA that the inclusion of a provision providing for pay for unused leave is prevalent within the array, and to that extent, we affirm the CIR's order.
But we also conclude that on this record, the terms of the provision ordered by the CIR are not supported by a preponderance of the evidence. For example, we note that the rate of reimbursement differs in many of the schools in the array. In addition, some schools in the array pay for both sick and personal days, while others pay for just one or the other. Still other schools offer additional personal days in return for unused sick days rather than payment for unused days. We therefore remand this action to the CIR with directions to consider the appropriate terms of the pay for unused leave provision to be included in the parties' agreement.

VI. CONCLUSION
We affirm in part, and in part reverse and remand the decision of the CIR.
AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.
HEAVICAN, C.J., concurring in part, and in part dissenting.
I concur with the majority insofar as it concludes that the inclusion of payment for *611 unused sick and personal leave is prevalent and should be included in the parties' agreement. I also concur with the majority's directive that the terms of such a clause should be considered by the CIR upon remand.
However, I disagree with the majority's conclusion that the CIR has the authority to include a contract continuation clause in the parties' agreement. Because I believe that such a clause is a violation of Neb. Rev.Stat. § 48-810.01 (Reissue 2004) and therefore in excess of the CIR's authority, I respectfully dissent from the portion of the majority's opinion concluding otherwise.
Section 48-810.01 provides that "[n]otwithstanding any other provision of law, the State of Nebraska and any political or governmental subdivision thereof cannot be compelled to enter into any contract or agreement, written or otherwise, with any labor organization concerning grievances, labor disputes, rates of pay, hours of employment or conditions of work." I believe that essential to the question of whether this section has been violated is an understanding of the importance placed upon the bargaining and negotiation process under the Industrial Relations Act (Act).[1]
Under the Act, public employees are given the right to be "represented by employee organizations to negotiate collectively with their public employers in the determination of their terms and conditions of employment and the administration of grievances arising thereunder."[2] To bargain in good faith under the Act requires "the performance of the mutual obligation of the employer and the labor organization to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment or any question arising thereunder."[3] Public employers are required under the Act to bargain collectively; any failure to do so is generally considered a prohibited practice and is viewed as a violation of the Act.[4] And the CIR is given the authority to order parties to an industrial dispute to bargain collectively in situations in which the CIR believes the parties have failed to bargain or have not bargained in good faith.[5]
With this backdrop, I turn to the question of whether the CIR ordered the District to enter into a contract in violation of § 48-810.01. I acknowledge that the CIR's inclusion of a contract continuation clause was not an explicit order to enter into a contract. However, I would find the inclusion of such a clause akin to such an order and thus in violation of § 48-810.01.
In this case, the CIR's authority is limited to deciding industrial disputes for the contract year in dispute.[6] Unlike a situation in which the parties agree during the bargaining process to a contract continuation clause where such a clause is included by the CIR in the parties' agreement, the parties are potentially bound by terms that govern their relationship beyond that contract year. These would be terms that were previously imposed upon them by the CIR with no attempt by the parties to reach their own agreement through the bargaining process so essential to the Act.
Moreover, the CIR has only the authority given to it by statute, specifically, the *612 authority to determine industrial disputes between employers and employees.[7] And this court has also held that such is not a violation § 48-810.01.[8] I would not disturb that holding. But in my view, the inclusion of a contract continuation clause is not the resolution of an industrial dispute. Instead, these types of clauses almost seem designed to resolve, without the input of either party to an agreement, future industrial disputes. As such, I would find it to be in excess of the CIR's authority to determine industrial disputes.
I find unpersuasive Clarkson Educ. Ass'n v. Colfax Co. School Dist.,[9] which the CCEA cites in support of its position. In that case, the CIR concludes that it is within its authority to include a contract continuation clause. But the primary basis for the CIR's decision in that case was a National Labor Relations Board case, United States Pipe and Foundry Company v. N.L.R.B.[10] I believe the CIR's reliance on that case was misplaced, as the case involved contract duration as a topic of mandatory bargaining. In my view, contract duration and contract continuation are two different things: duration is the length of any given contract as agreed upon by the parties, while continuation is the forced implementation of a contract upon both parties.
The CCEA also relies on this court's decision in Hyannis Ed. Assn. v. Grant Cty. Sch. Dist. No. 38-0011.[11] I also find that unpersuasive. This court concluded in Hyannis Ed. Assn. that a deviation clause allowing the district to deviate from the bargained-for salary schedule affected wages and that thus, it was within the CIR's authority to include such a term in the parties' agreement. But because the issue in Hyannis Ed. Assn. was a deviation from the salary schedule, it had a direct impact on wages. Such is distinguishable from the contract continuation language at issue in this case.
I would conclude that the inclusion of a contract continuation clause by the CIR is akin to an order to enter into a contract, is contrary to the parties' right to bargain, and was a violation of § 48-810.01. And because I believe the CIR violated § 48-810.01, I would also conclude that the CIR exceeded its authority when it ordered a contract continuation clause to be included in the parties' agreement.
CONNOLLY, J., joins in this concurrence and dissent.
NOTES
[1] See Hyannis Ed. Assn. v. Grant Cty. Sch. Dist. No. 38-0011, 274 Neb. 103, 736 N.W.2d 726 (2007).
[2] See Crete Ed. Assn. v. Saline Cty. Sch. Dist. No. 76-0002, 265 Neb. 8, 654 N.W.2d 166 (2002).
[3] Hyannis Ed. Assn. v. Grant Cty. Sch. Dist. No. 38-0011, 269 Neb. 956, 698 N.W.2d 45 (2005).
[4] Id. at 966, 698 N.W.2d at 54.
[5] Mtr. of Incorporated Vil. of Lynbrook v. PERB, 48 N.Y.2d 398, 403 n. 3, 399 N.E.2d 55, 57 n. 3, 423 N.Y.S.2d 466, 467 n. 3 (1979).
[6] Walnut Creek Honda Associates 2, Inc. v. N.L.R.B., 89 F.3d 645 (9th Cir.1996); N.L.R.B. v. Yutana Barge Lines, Inc., 315 F.2d 524 (9th Cir. 1963).
[7] Metro. Tech. Com. Col. Ed. Assn. v. Metro. Tech. Com. Col. Area, 203 Neb. 832, 842-43, 281 N.W.2d 201, 206 (1979).
[8] See id. at 842, 281 N.W.2d at 206.
[9] See id. at 842-43, 281 N.W.2d at 206.
[10] Teaneck Bd. of Educ. v. Teaneck Teachers Ass'n., 94 N.J. 9, 462 A.2d 137 (1983).
[11] City of Pittsburgh v. Com., PLRB, 539 Pa. 535, 653 A.2d 1210 (1995).
[12] West Central Educ. v. West Central School, 655 N.W.2d 916 (S.D.2002); Piscataway Ed. Ass'n v. Bd. of Ed., 307 N.J.Super. 263, 704 A.2d 981 (1998).
[13] School Committee of Natick v. Education Association of Natick, 423 Mass. 34, 666 N.E.2d 486 (1996).
[14] Crete Ed. Assn. v. Saline Cty. Sch. Dist. No. 76-0002, supra note 2, 265 Neb. at 28, 654 N.W.2d at 181.
[15] See id.
[16] Transport Workers v. Transit Auth. of Omaha, 216 Neb. 455, 344 N.W.2d 459 (1984).
[17] Brief for appellant at 15.
[18] Transport Workers v. Transit Auth. of Omaha, supra note 16, 216 Neb. at 461, 344 N.W.2d at 463.
[19] General Drivers & Helpers Union, Local No. 554 v. Saunders County, Nebraska, 6 C.I.R. 313 (1982).
[20] Lincoln County Sheriff's Employees Association Local No. 546 v. County of Lincoln, 5 C.I.R. 441 (1982).
[21] Brief for appellant at 18.
[22] Clarkson Educ. Ass'n v. Colfax Co. School Dist., 13 C.I.R. 31 (1997).
[23] Hyannis Ed. Assn. v. Grant Cty. Sch. Dist. No. 38-0011, supra note 3, 269 Neb. at 967-68, 698 N.W.2d at 55.
[1] Neb.Rev.Stat. §§ 48-801 to 48-838 (Reissue 2004 & Cum.Supp.2008).
[2] § 48-837.
[3] § 48-816(1).
[4] § 48-824.
[5] § 48-816(1).
[6] § 48-818.
[7] School Dist. of Seward Education Assn. v. School Dist. of Seward, 188 Neb. 772, 199 N.W.2d 752 (1972).
[8] See id.
[9] Clarkson Educ. Ass'n v. Colfax Co. School Dist., 13 C.I.R. 31 (1997).
[10] United States Pipe and Foundry Company v. N.L.R.B., 298 F.2d 873 (5th Cir.1962).
[11] Hyannis Ed. Assn. v. Grant Cty. Sch. Dist. No. 38-0011, 269 Neb. 956, 698 N.W.2d 45 (2005).