That has not occurred in this case. Although DMK and Lanoha have prevailed on this appeal, they have yet to prove and obtain a judgment on their liability claim under § 8-1118(1). Accordingly, we overrule their motion for attorney fees without prejudice.

## V. CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded for
further proceedings.

Wright, J., not participating.

———————————

Professional Firefighters Association of Omaha,
Local 385, AFL-CIO CLC, et al., appellants,
v. City of Omaha, Nebraska, a municipal
corporation, appellee.
___ N.W.2d ___

Filed March 6, 2015.    Nos. S-14-230, S-14-375, S-14-627.

1.  **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.
2.  **Statutes: Judgments: Appeal and Error.** The meaning and interpretation of a statute are questions of law. An appellate court independently reviews questions of law decided by a lower court.
3.  **Commission of Industrial Relations: Final Orders: Contracts.** When Nebraska's Commission of Industrial Relations enters a final order setting wages, hours, and terms and conditions of employment which are binding on the employer, the order is, in every sense, a contract between the parties.
4.  **Municipal Corporations: Public Officers and Employees: Ordinances.** City ordinances related to how city employees should be paid are agreements by the city to follow the ordinances and pay employees at the relevant rates.
5.  **Actions: Employer and Employee: Wages: Attorney Fees: Case Disapproved: Appeal and Error.** To the extent *Brockley v. Lozier Corp*., 241 Neb. 449, 488 N.W.2d 556 (1992), authorizes two attorney fee awards under the Nebraska Wage Payment and Collection Act to an employee who is unsuccessful at the trial court level but successful on appeal, it is disapproved.

6. **Employer and Employee: Employment Contracts: Wages: Words and Phrases.** Wages under the Nebraska Wage Payment and Collection Act include the compensation and benefits that an employer actually pays for labor or services, including amounts which are not paid directly to employees.

Appeals from the District Court for Douglas County: Peter C. Bataillon, Judge. Reversed and remanded with directions.

John E. Corrigan, of Dowd, Howard & Corrigan, L.L.C., for appellants.

Bernard J. in den Bosch, Deputy Omaha City Attorney, for appellee.

Heavican, C.J., Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Stephan, J.

The Nebraska Wage Payment and Collection Act (the Act)[1] defines "[w]ages" as "compensation for labor or services rendered by an employee, including fringe benefits, when previously agreed to and conditions stipulated have been met by the employee."[2] In these consolidated cases, firefighters employed by the City of Omaha (the City) and represented by a union filed suit under the Act for wages they claimed were due under an order entered by Nebraska's Commission of Industrial Relations (CIR). The principal issue in these appeals is whether the claimed wages were "agreed to" as of the date of the CIR order or, rather, as of the later date when the parties' conflicting interpretations of that order were resolved by the district court. We conclude the wages were agreed to on the date of the final CIR order and reverse, and remand with directions.

## I. BACKGROUND

Appellants are (1) the Professional Firefighters Association of Omaha, Local 385, AFL-CIO CLC, the recognized exclusive

[1] See Neb. Rev. Stat. §§ 48-1228 to 48-1234 (Reissue 2010 & Cum. Supp. 2014).

[2] § 48-1229(6).

collective bargaining representative for a unit of Omaha fire department employees; (2) Steve LeClair, the president of the association; and (3) individual employees covered by the bargaining unit represented by Local 385. They will be collectively referred to herein as "the firefighters."

On or about December 29, 2007, a collective bargaining agreement between the firefighters and the City expired. The parties were unable to reach a new agreement and therefore litigated a wage case before the CIR. The CIR issued its findings and order on December 23, 2008, and then, after the parties sought clarification, issued a final order in the case on February 18, 2009. This order set the minimum and maximum pay rate for the period January 1 through December 31, 2008. Neither party appealed from the CIR orders.

The CIR's final order gave the City 90 days to pay in one lump sum all adjustments and compensation resulting from the order. On May 6, 2009, the firefighters notified the City that they disagreed with how the City was implementing the CIR orders in various respects, including that the City was not complying with Omaha Mun. Code, ch. 23, art. III, div. 3, § 23-148 (2001). That section provides:

> When a uniformed member of the fire or police department is paid at a rate which exceeds that at which such member's senior in rank, grade or class is being paid, such senior officer or officers shall be increased to the next higher step within the assigned pay range irrespective of the date of last increase. The effective date of such increase shall become the anniversary date for pay purposes each year thereafter until promoted or demoted. This provision shall not apply when a member has been reduced in pay, grade or class for disciplinary reasons or when he has not been granted a pay increase due to unsatisfactory performance; neither shall it apply when such condition is the result of [the] use of the two-step salary increase provision.

After the CIR orders, the City paid certain firefighters who were more senior in rank, grade, or class less money than lower ranking firefighters. The City did so based on its understanding that because the CIR orders allowed for overlap

between the ranks in terms of pay, the orders preempted § 23-148. In addition, the City interpreted the CIR orders as not requiring either "hazmat" certification pay for certain firefighters or specialty shift pay premiums for paramedics.

On June 3, 2009, the firefighters filed two declaratory judgment actions in the district court for Douglas County, seeking declarations that the City was misinterpreting the terms of the CIR orders. The actions included an allegation that the City was not properly paying wages due. On June 23, while the declaratory judgments were pending, the firefighters also filed a wage claim with the City's comptroller.[3] This claim alleged the City owed additional wages to certain firefighters based on the 2008 and 2009 CIR orders and § 23-148. It asserted that if the claim was disallowed, the firefighters would file suit against the City under the Act.

On January 13, 2012, the district court resolved the declaratory judgment actions and determined the City owed additional wages because it had failed to comply with the CIR orders and § 23-148. On March 13, the City denied the wage claim the firefighters had previously filed. On April 10, the firefighters brought this suit in district court under the Act. They allege the total wages in dispute amount to $1,515,718.20.

The parties agreed there were no genuine issues of material fact and filed cross-motions for summary judgment. The district court granted summary judgment in favor of the City. It reasoned that until it made its decisions in the declaratory judgment actions, "there was uncertainty as to what the rights and responsibilities of the parties were" with respect to wages due and that thus, until that time, no wages were "previously agreed to" under the Act, so the firefighter's 2009 claim was not ripe. In a subsequent order in response to a motion for reconsideration filed by the firefighters, the district court transcribed the judgments it had entered in the declaratory judgment actions, but again held that the firefighters had no valid claim under the Act. The firefighters filed three separately docketed notices of appeal, which were consolidated. We granted the firefighters' petition to bypass the Nebraska Court of Appeals.

---

[3] See Neb. Rev. Stat. § 14-804 (Reissue 2012).

## II. ASSIGNMENTS OF ERROR

The firefighters assign that the district court erred when it (1) found their claim was not covered by the Act and (2) denied them attorney fees authorized by § 48-1231.

## III. STANDARD OF REVIEW

[1] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[4]

[2] The meaning and interpretation of a statute are questions of law. An appellate court independently reviews questions of law decided by a lower court.[5]

## IV. ANALYSIS

In these appeals, the only issues before us are whether the firefighters had a valid claim under the Act and, if so, whether they should receive attorney fees under the Act. We are aware that the Act has been amended since the expiration of the collective bargaining agreement and the issuance of the CIR and district court orders. However, there are no substantive revisions and, thus, we will refer to the current version.

### 1. Agreement on Wages

The firefighters sought recovery from the City under a provision of the Act which states:

> An employee having a claim for wages which are not paid within thirty days of the regular payday designated or agreed upon may institute suit for such unpaid wages in the proper court. If an employee establishes a claim and secures judgment on the claim, such employee shall be entitled to recover (a) the full amount of the judgment

---

[4] *Potter v. Board of Regents*, 287 Neb. 732, 844 N.W.2d 741 (2014); *C.E. v. Prairie Fields Family Medicine*, 287 Neb. 667, 844 N.W.2d 56 (2014).

[5] *Pinnacle Enters. v. City of Papillion*, 286 Neb. 322, 836 N.W.2d 588 (2013).

and all costs of such suit and (b) if such employee has employed an attorney in the case, an amount for attorney's fees assessed by the court, which fees shall not be less than twenty-five percent of the unpaid wages. If the cause is taken to an appellate court and the plaintiff recovers a judgment, the appellate court shall tax as costs in the action, to be paid to the plaintiff, an additional amount for attorney's fees in such appellate court, which fees shall not be less than twenty-five percent of the unpaid wages.[6]

The term "wages" is defined by the Act as "compensation for labor or services rendered by an employee, including fringe benefits, when previously agreed to and conditions stipulated have been met by the employee, whether the amount is determined on a time, task, fee, commission, or other basis."[7]

This case differs from the typical case brought to recover wages under the Act in two respects. First, there were 654 named plaintiffs asserting wage claims. Of these, 394 persons obtained judgments in varying amounts. Second, the actual wage entitlement issue was litigated in separate declaratory judgment actions while the wage claim was pending before the City and before the action from which these appeals arise was filed in district court. This procedural course was dictated by Nebraska law governing claims against a city of the metropolitan class. Section 14-804 specifies the procedure for filing such claims. We have held that the filing of a claim pursuant to § 14-804 is a procedural prerequisite to the prosecution of a wage claim against a city in the district court pursuant to the Act.[8] Section 14-804 provides that when a claim of any person against the city "is disallowed, in whole or in part, by the city council, such person may appeal from the decision of said city council to the district court of the same county, as provided in section 14-813." Thus, the firefighters could not

---

[6] § 48-1231(1).

[7] § 48-1229(6).

[8] See, *Hawkins v. City of Omaha*, 261 Neb. 943, 627 N.W.2d 118 (2001); *Thompson v. City of Omaha*, 235 Neb. 346, 455 N.W.2d 538 (1990).

seek relief in district court under the Act until the City denied their wage claim, which did not occur until after the declaratory judgment actions were resolved.

But the firefighters were not prevented from seeking declaratory relief while their wage claim remained pending before the City. An action for a declaratory judgment which involves unpaid wages allegedly owed by a city is distinct from an action for unpaid wages under the Act.[9] Although the result of such a declaratory judgment may be that a city will eventually have to pay money to the plaintiffs, the action is not a claim for money damages, but, rather, an action for declaration of rights.[10] Here, when the declaratory judgment actions were resolved and the City disallowed their pending wage claim, the firefighters timely filed this action in district court pursuant to Neb. Rev. Stat. § 14-813 (Reissue 2012), asserting their claim under the Act.

This procedural history is important to our resolution of the primary issue in this appeal, which is the point in time when wages payable to the firefighters for their work in 2008 were "agreed to" by the parties within the meaning of the Act. Specifically, were the wages "agreed to" at the time of the final CIR order in 2009, as the firefighters contend, or were they not "agreed to" until the declaratory judgment actions were resolved in 2012, as the district court determined and the City argues on appeal? The date of the agreement determines whether the firefighters had a valid claim on June 23, 2009.

The district court reasoned that the claim filed by the firefighters in 2009 was not ripe, because until it resolved the declaratory judgment actions in 2012, "there was uncertainty as to what the rights and responsibilities of the parties [under the CIR orders] were." The court concluded that there thus was no agreement as to the firefighters' 2008 compensation until the parties accepted the court's 2012 decision in the declaratory judgment actions "by either not appealing or following the Court's decision."

---

[9] *Calabro v. City of Omaha*, 247 Neb. 955, 531 N.W.2d 541 (1995).

[10] *Id.*

This reasoning is incorrect. In virtually every case brought under the Act, the employee and the employer dispute whether wages are owed based on an existing contract or agreement of some sort. The court then determines which party's interpretation of that agreement is correct.[11] The fact that there is a reasonable disagreement between the parties as to how the agreement regarding compensation should be interpreted does not mean that no agreement as to wages due exists until the dispute is resolved by a court.

For example, in *Fisher v. PayFlex Systems USA*,[12] two employees alleged they were entitled to be paid upon separation from employment for their earned but unused "'paid time off'" hours per the employee handbook. The employer argued they were not so entitled, because those hours were not vacation hours. In a 4-to-3 decision, we held the employees were correct. But even the fact that three members of this court agreed with the employer's interpretation of the handbook at issue did not defeat the employees' claims under the Act. The employer was held liable despite the existence of a reasonable disagreement as to whether the wages were owed pursuant to the parties' agreement, which was ultimately decided by this court.

The only mention of "reasonable dispute" in the Act is the final sentence of § 48-1231(1), which addresses the circumstance in which an employee fails to recover a judgment on a wage claim. That sentence provides: "If the court finds that no reasonable dispute existed as to the fact that wages were owed or as to the amount of such wages, the court may order the employee to pay the employer's attorney's fees and costs

---

[11] See, e.g., *Roseland v. Strategic Staff Mgmt.*, 272 Neb. 434, 722 N.W.2d 499 (2006) (superseded by statute as stated in *Coffey v. Planet Group*, 287 Neb. 834, 845 N.W.2d 255 (2014)); *Rauscher v. City of Lincoln*, 269 Neb. 267, 691 N.W.2d 844 (2005); *Kinney v. H.P. Smith Ford*, 266 Neb. 591, 667 N.W.2d 529 (2003); *Moore v. Eggers Consulting Co.*, 252 Neb. 396, 562 N.W.2d 534 (1997) (superseded by statute as stated in *Coffey, supra* note 11); *Sindelar v. Canada Transport, Inc.*, 246 Neb. 559, 520 N.W.2d 203 (1994).

[12] *Fisher v. PayFlex Systems USA*, 285 Neb. 808, 810, 829 N.W.2d 703, 707 (2013).

of the action as assessed by the court." There is no provision in the Act stating that the existence of a reasonable dispute between the parties affects the employer's liability. To the contrary, the reasonableness of the dispute is not even an issue with respect to the employer's obligation to pay the employee's attorney fees if the employee prevails. The plain language of § 48-1231 simply provides that if the employee establishes a claim and secures a judgment on it, he or she is entitled to recover the full amount of the judgment and attorney fees of not less than 25 percent of the unpaid wages. We will not read into a statute a meaning that is not there.[13]

[3,4] In this case, the "agreement" of the parties with respect to 2008 compensation consisted of the CIR orders entered in 2008 and 2009 and the language of § 23-148. When the CIR enters a final order setting wages, hours, and terms and conditions of employment which are binding on the employer, the order is, in every sense, a contract between the parties.[14] Moreover, we have held that Omaha city ordinances related to how city employees should be paid are agreements by the City to follow the ordinances and pay employees at the relevant rates.[15] In a typical case, a disagreement of the parties regarding compensation due would be resolved by a court in an action brought by an employee under the Act. The fact that the disagreement here was resolved in separate declaratory judgment actions which were decided before the firefighters could file suit pursuant to § 14-813 does not affect the City's liability under the Act.

We are not persuaded by the City's argument that the Court of Appeals' decision in *Freeman v. Central States Health & Life Co.*[16] supports its position that the wages were not

---

[13] See, *Kerford Limestone Co. v. Nebraska Dept. of Rev.*, 287 Neb. 653, 844 N.W.2d 276 (2014); *SourceGas Distrib. v. City of Hastings*, 287 Neb. 595, 844 N.W.2d 256 (2014).

[14] *Transport Workers v. Transit Auth. of Omaha*, 216 Neb. 455, 344 N.W.2d 459 (1984).

[15] See *Hawkins, supra* note 8.

[16] *Freeman v. Central States Health & Life Co.*, 2 Neb. App. 803, 515 N.W.2d 131 (1994).

"previously agreed to" under the Act until the declaratory judgments were entered. In that case, two employees brought an action under the Act claiming they were entitled to wages for overtime. One employee had agreed to a salary of $1,545 per month, and the other had agreed to a salary of $1,436 per month. Both apparently expected to work 38.75 hours per week for their salaries and claimed they were entitled to compensation for overtime under the federal Fair Labor Standards Act (FLSA)[17] for hours worked over and above that amount. The Court of Appeals reversed a judgment for the employees, concluding there was no agreement between the parties to pay overtime, because the FLSA is the exclusive remedy for enforcement of rights created under it and thus the employees could not use the Act to enforce rights they possessed under the FLSA. This determination that the FLSA could not be the statutory source of a previous agreement regarding compensation under the Act is factually distinguishable from the instant case. Here, there clearly was a previous agreement, consisting of the CIR orders and § 23-148, upon which the firefighters' claims were based. And unlike the FLSA, we have previously held that Omaha city ordinances related to pay scale can be the basis of a "previous agreement" under the Act.[18]

The City contends that a finding that an agreement existed for purposes of the Act prior to the resolution of the declaratory judgment actions would produce an unduly harsh result. It argues that once a dispute arose between the City and the firefighters about what wages were due under the CIR orders and § 23-148, it found itself in the unenviable position of either disputing the firefighters' interpretation of the CIR orders and § 23-148 and putting itself at risk of paying at least 25 percent of the disputed wages as attorney fees under the Act, or paying the wages the firefighters demanded under protest and trying to recover them later if the City prevailed in the declaratory judgment actions. Clearly, the City's exposure in this case is greatly magnified by the fact

---

[17] See 29 U.S.C. § 201 et seq. (2012 & Supp. I 2013).

[18] See *Hawkins, supra* note 8.

that the disputed agreement arose in the context of collective bargaining. But the Act expressly defines "[e]mployer" to include "the state or any . . . political subdivision."[19] And the Act does not distinguish an employer's liability for attorney fees resulting from nonpayment of wages owing to multiple employees under a collective bargaining agreement from the more typical circumstance of a wage claim asserted by an individual employee.

For these reasons, we conclude that the district court erred in determining that the firefighters did not have a valid claim under the Act.

## 2. ATTORNEY FEES

As noted, § 48-1231(1) provides that if an employee establishes a claim and secures a judgment on it, he or she shall receive the full amount of the judgment and "an amount for attorney's fees assessed by the court, which fees shall not be less than twenty-five percent of the unpaid wages." Section 48-1231(1) further provides:

> If the cause is taken to an appellate court and the plaintiff recovers a judgment, the appellate court shall tax as costs in the action, to be paid to the plaintiff, an additional amount for attorney's fees in such appellate court, which fees shall not be less than twenty-five percent of the unpaid wages.

The firefighters argue that the total amount of unpaid wages was $1,515,718.20, which includes $259,118 in pension contributions made by the City to the board of trustees of the City's Police and Fire Retirement System's pension fund (pension fund) based upon the additional wages which the court determined the City owed. The firefighters contend that they were entitled to an attorney fee award of at least 25 percent of that amount, or $378,929.55, by the district court and that they are entitled to an additional award of the same amount by this court. The City disputes that the firefighters are entitled to two attorney fee awards if they prevail in this appeal. The City

---

[19]  § 48-1229(2).

also argues that the computation of any attorney fees should not include the contribution the City made to the pension fund, because that amount does not constitute "wages" within the meaning of the Act.

### (a) One Award or Two?

The second sentence of § 48-1231(1) requires a trial court to award attorney fees to an employee who "establishes a claim and secures judgment on the claim." The third sentence requires an appellate court to award attorney fees where a "plaintiff recovers a judgment" on appeal. Because the "plaintiff" in an action under the Act will always be an "employee" claiming unpaid wages, we regard these terms as used in the statute to be synonymous. We construe these two sentences to require a trial or appellate court which finds merit in an employee's wage claim to award attorney fees of at least 25 percent of the unpaid wages found due.

This could result in an employee's receiving two attorney fee awards. If a trial court finds merit in an employee's claim for unpaid wages, it is required to enter judgment for the amount of wages due plus attorney fees of at least 25 percent of the unpaid wages. If the employer then appeals, but the employee prevails on appeal, the employee would be entitled to an additional attorney fee award of at least 25 percent of the unpaid wages by the appellate court.

But it does not result in the firefighters' receiving two attorney fee awards here. The district court found the firefighters had no valid claim under the Act. Therefore, they did not "establish[] a claim and secure[] judgment on the claim" in the trial court, and under the plain language of § 48-1231(1), they are not entitled to an attorney fee award for the trial proceedings. Because, however, we determine that the firefighters do have a valid claim under the Act, they have "recover[ed] a judgment" on appeal and are entitled to an award of attorney fees by this court. This construction of § 48-1231(1) achieves the statute's purpose in that it prevents an employer from being punished for winning at trial, yet ensures that employees will be fully compensated for reasonable attorney fees incurred in

the litigation, because the appellate court may award attorney fees in excess of the statutory minimum where an appropriate showing is made.[20]

[5] Although we have not specifically addressed this issue in the past, our interpretation today is in accord with our case law. We have consistently approved two attorney fee awards, one for trial and one for the appeal, in cases where the employee was successful at both levels.[21] But in *Brockley v. Lozier Corp.*,[22] we reversed a trial court judgment in favor of an employer and directed that the employee be awarded a 25-percent attorney fee by the trial court and an additional 25-percent attorney fee for the appeal. In reaching this result, we did not examine or analyze the specific language of § 48-1231(1), as we have done here. We conclude that to the extent *Brockley* authorizes two attorney fee awards under the Act to an employee who is unsuccessful at the trial court level but successful on appeal, it is disapproved. Because the firefighters did not establish their claim and secure a judgment on it in the district court, they are not entitled to attorney fees for the trial. But because they were successful in recovering a judgment on appeal, they are entitled to an attorney fee award from this court under the Act.

### (b) Pension Contributions

The remaining issue is whether the City's contributions to the pension fund as the result of the additional wages found due should be included in the amount on which the attorney fee award is based. The record reflects that the City's mandatory contributions to the pension fund are calculated as a percentage of wages due and are used to fund benefits paid to firefighters upon retirement. The retirement benefits are calculated based on a percentage of an employee's pay from the highest consecutive 26 biweekly payroll periods within the

---

[20] See, *Herrington v. P.R. Ventures*, 279 Neb. 754, 781 N.W.2d 196 (2010); *Concrete Indus. v. Nebraska Dept. of Rev.*, 277 Neb. 897, 766 N.W.2d 103 (2009).

[21] See cases cited *supra* note 11.

[22] *Brockley v. Lozier Corp.*, 241 Neb. 449, 488 N.W.2d 556 (1992).

employee's final 5 years of service. The percentage used to calculate the benefit ranges from 45 to 69 percent, depending upon the employee's years of service.

As noted, "[w]ages" under the Act include "fringe benefits," which the Act defines as including "sick and vacation leave plans, disability income protection plans, *retirement, pension, or profit-sharing plans*, health and accident benefit plans, and any other employee benefit plans or benefit programs regardless of whether the employee participates in such plans or programs."[23] The firefighters argue that the City's contributions to the pension fund on behalf of an employee are a "fringe benefit" within this definition. But the City contends that they are not, because the benefits are paid to a third party and an individual employee "has no entitlement to them."[24]

[6] We have held that "wages" under the Act include a bonus received by an employee,[25] the cash value of a life insurance policy,[26] an employee's share of profits,[27] and unused vacation time.[28] It is true that in each of these cases, the benefit was paid to the employee. But the Act itself contains no language specifically requiring that a fringe benefit be received by an employee in order to be includable in the statutory definition of "wages." To the contrary, § 48-1229(4) includes various "retirement, pension, or profit-sharing plans" and "any other employee benefit plans or benefit programs" in the definition of fringe benefits, "regardless of whether the employee participates in such plans or programs." Reading §§ 48-1229(4) and (6) together, we conclude that "wages" under the Act include the compensation and benefits that an employer actually pays for labor or services, including amounts which are

---

[23] § 48-1229(4) and (6) (emphasis supplied).

[24] Brief for appellee at 26.

[25] *Law Offices of Ronald J. Palagi v. Howard*, 275 Neb. 334, 747 N.W.2d 1 (2008).

[26] *Sindelar, supra* note 11.

[27] *Suess v. Lee Sapp Leasing*, 229 Neb. 755, 428 N.W.2d 899 (1988) (superseded by statute as stated in *Kinney, supra* note 11).

[28] *Fisher v. PayFlex USA, supra* note 12; *Roseland, supra* note 11.

not paid directly to employees. Thus, the City's contribution to the pension fund based upon the additional compensation which it was required to pay to the firefighters for 2008 should be included in the amount utilized to calculate the attorney fee award.

### (c) Computation of Award

The City was required to pay a total of $1,515,718.20 in additional wages and benefits due under the 2008 and 2009 CIR orders. This amount includes the $259,118 in pension contributions made by the City to the pension fund. Because the firefighters have recovered a judgment on appeal, they are entitled to an attorney fee award of at least $378,929.55, representing 25 percent of the wages due. We decline to award additional attorney fees in this case.

### V. CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court and remand the cause to the district court with directions to enter judgment for the firefighters and against the City in the amount of $378,929.55, representing the statutory attorney fee award for recovery of judgment on appeal.

REVERSED AND REMANDED WITH DIRECTIONS.

Wright, J., participating on briefs.

---

IN RE GUARDIANSHIP AND CONSERVATORSHIP OF DONALD D.
BARNHART, A PERSON IN NEED OF PROTECTION.
ALICE F. BARNHART AND SHERRY HEADY,
APPELLEES, V. VALLEY LODGE 232
A.F. & A.M. ET AL., APPELLANTS.

___ N.W.2d ___

Filed March 6, 2015.    No. S-14-420.

1. **Standing: Jurisdiction: Parties.** Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court.
2. **Jurisdiction.** The question of jurisdiction is a question of law.
3. **Statutes.** Statutory interpretation presents a question of law.